## Knowles's Estate.

572

Argued March 19, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Jesse S. Shepard* and *Raymond M. Remick,* for appellants.—The act is unconstitutional in that it contravenes the due process clause of the Fourteenth Amendment to the federal Constitution, in that in effect it attempts to levy a tax based on the value of tangible personal property and real estate having an actual situs in other states: Frick's Est., 268 U. S. 473.

The act is invalid in that it contravenes article IX, section 1, of the Constitution of Pennsylvania, by providing in effect for an exemption from its scope of estates of less than one hundred thousand dollars in value, etc.: Cope's Est., 191 Pa. 21.

The Act of 1927 is an unauthorized delegation of the legislative power: Locke's App., 72 Pa. 491; O'Neil v. Ins. Co., 166 Pa. 72; Com. v. Alderman, 275 Pa. 483.

The act contravenes article III, section 6, of the Constitution of Pennsylvania in that it attempts to introduce into the statute and make operative as a part thereof an act of Congress by a mere reference to its title: Com. v. Dougherty, 39 Pa. Superior Ct. 338; Com. v. Sweeney, 61 Pa. Superior Ct. 367.

The act contravenes article III, section 6, of the Constitution of Pennsylvania, in that the subject of the act

is not clearly expressed in its title: Schoyer v. Oil Co., 284 Pa. 189.

The Act of 1927, being unquestionably unconstitutional as to the latter clause apportioning the tax, is void as a whole in that it is indivisible: Pollock v. Loan & Trust Co., 158 U. S. 635.

*Franklin S. Edmonds,* with him *Robert M. Boyle, William M. Boenning, J. Warren Brock, Philip S. Moyer,* Deputy Attorney General, and *Cyrus E. Woods,* Attorney General, for appellee.—The Act of May 7, 1927, P. L. 859, does not violate article IX, section 1, of the Constitution of Pennsylvania: Frick's Est., 268 U. S. 473; Com. v. Alderman, 275 Pa. 483; Maine v. Ry., 142 U. S. 217; Knowlton v. Moore, 178 U. S. 41; Scholey v. Rew, 90 U. S. 99; Pollock v. Loan & Trust Co., 158 U. S. 601; Thomas v. U. S., 192 U. S. 363; Magoun v. Bank, 170 U. S. 283; Kirkpatrick's Est., 275 Pa. 271; Knisely v. Cotterel, 196 Pa. 614; Williamsport v. Wenner, 172 Pa. 173; Kelly v. Pittsburgh, 85 Pa. 170; Elder v. Elder, 256 Pa. 139.

The Act of May 7, 1927, P. L. 859, is not invalid or unconstitutional on the ground that the tax imposed thereby is arbitrary or unreasonable: Frick v. Penna., 268 U. S. 473; Heisler v. Colliery Co., 274 Pa. 448; Newton's Est., 28 Pa. Dist. R. 183; Knowlton v. Moore, 178 U. S. 41.

The Act of May 7, 1927, P. L. 859, does not violate article III, section 3, of the Constitution of Pennsylvania which provides that "no bill, except general appropriation bills, shall be passed containing more than one subject which shall be clearly expressed in the title": Millvale Boro. v. Ry., 131 Pa. 1; Phila. v. Ry., 142 Pa. 484; Mt. Joy Boro. v. Turnpike Co., 182 Pa. 581; Com. v. Bell, 288 Pa. 29; Hostetter's Est., 267 Pa. 193; Spangler's Est., 281 Pa. 118.

The apportionment clause of the Act of May 7, 1927, P. L. 859, is severable, and may be stricken from the act,

and the balance of the act sustained as a valid, constitutional enactment of the legislature.

The Act of 1927 is not unconstitutional, as an improper delegation of the legislative function, (article II, section 1), or as an unlawful attempt to incorporate another statute into itself, by reference to title only: Article III, section 6; Com. v. Sweeney, 61 Pa. Superior Ct. 367; Com. v. Alderman, 275 Pa. 483.

The Act of 1927 is not unconstitutional as local or special legislation: Article III, section 7; Heisler v. Colliery Co., 274 Pa. 448.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 25, 1929:

Emma C. Knowles died December 21, 1927, leaving a will by which she gave her entire estate to her husband and four children, "in the way and manner provided by the present intestate laws of the Commonwealth of Pennsylvania." Appeals by executors under the will and by legatees, hereinafter called the appellants, from an appraisement made by the register of wills of Philadelphia County, for the purpose of assessing the inheritance transfer tax due to the Commonwealth from the estate of decedent, are before us; the Commonwealth also has appealed, as will be noted more specifically later on in this opinion.

The United States Revenue Act of 1926 provides, by section 301 (b), 44 Stat. 70, (U. S. C. A. Tit. 26, section 1093) as follows: "The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any state or territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed......shall not exceed eighty per centum of the. tax imposed." By this statute, the federal government has declared it to be the national policy that the net value of all estates (in excess of $100,000, that amount being exempt: Section 303 (a) 4, 44 Stat. 72, U. S. C. A.

Tit. 26, section 1095) shall, before distribution to the persons entitled thereto, be reduced by certain percentages, progressively levied as succession taxes, but it is willing that the several states shall indirectly profit by this system; to that end, the federal statute in effect provides that, in all instances where a state imposes inheritance taxes, the federal government will allow, to those paying such local inheritance taxes, the amount thereof up to a sum equal to 80% of its own inheritance taxes, retaining the right to collect only so much of the federal tax as may exceed the sum thus relinquished. This is a method of distributing to the several states moneys collectible by the national government from their taxables, and the provision in question is not intended to either burden or benefit the taxpayer. Whenever a state does not see fit to take advantage of the situation thus created, the national government will collect the entire 100% of its assessed federal inheritance taxes.

When this Federal Revenue Act,—with its extraordinary provision, which gives the states an opportunity to increase their own revenues, without cost to those who pay them taxes, by passing legislation pursuant to it,—became effective, the legislature of Pennsylvania, to avail the Commonwealth of the provision in question, supplemented the Inheritance Tax Act of June 20, 1919, P. L. 521, by the Act of May 7, 1927, P. L. 859. The validity of the latter statute is attacked on this appeal.

It appears from the brief of the Commonwealth that fourteen other states, including New York, Massachusetts and Ohio, have also passed legislation to take advantage of the offer held out to them by the federal statute; and further, it is there estimated that, if the Pennsylvania statute of 1927, which we are about to recite, is valid legislation, it will result in largely increased revenue for our State, without additional cost to the taxpayers.

578

This supplementary Act of 1927 provides: "In order that the Commonwealth may receive the benefit of the ......Federal Revenue Act,......which grants a credit on the federal estate tax for.....:taxes paid to the state governments, additional transfer taxes for state purposes are hereby imposed upon the transfer, in trust or otherwise, of any property taxable under the provisions of the transfer inheritance tax laws of this Commonwealth [as follows:] Whenever in any estate the total tax paid or payable to the Commonwealth and any other state or territory, at the rates fixed under the inheritance tax law, shall be less than the total credit allowed by the federal law for taxes paid to the states, then the tax imposed by this act upon the transfer of such property shall be in amount equal to the difference between the total credit, allowable by the federal law for taxes actually paid or payable to the Commonwealth and any other state or territory under the inheritance tax laws." After the matter just quoted, a provision follows (which the court below viewed as "wholly independent" of the main purpose of the Act of 1927) stipulating how the increased tax authorized by the statute shall be apportioned among and charged off against the shares of those entitled to participate in the distribution of any estate thus assessed.

To apply the whole plan just stated to the present case: Here the federal inheritance tax is, in round figures, $99,000, and 80% of this is, approximately, $79,000. Under our Act of June 20, 1919, supra, the Pennsylvania inheritance tax payable by the estate of decedent is $32,000. If the amount last mentioned constitutes the only claimable allowance against the assessed federal tax, then the national government will receive (along with its unrelinquished 20%) the difference of $47,000; but if the supplementary Act of 1927, with which we are here particularly concerned, is valid legislation, then this $47,000 also will be paid to the Commonwealth and allowed as a credit to the estate of decedent by the na-

tional government, against the latter's claim for taxes. All of this means that the Commonwealth of Pennsylvania will gain the amount named, while neither the estate of the decedent nor the beneficiaries designated by her, will be put to any extra burden, cost or expense whatsoever.

The court below ends its opinion disposing of this case by stating: "It has been argued......with considerable force, [and] the admitted facts show, that these [complainants] are not injured [for] they will pay the Commonwealth of Pennsylvania the exact sum which otherwise they would be compelled to pay the federal government; hence they should not complain, and should not be heard as to any constitutional question." But, instead of applying the well-established rule thus suggested, that one unharmed by a statute will not be heard to complain of its alleged unconstitutionality (the applicability of which rule to this case will be discussed later), the court considered complainants' attack on the Act of 1927 and, while declaring it, generally speaking, to be valid legislation, at the same time pronounced a part of the statute void, on constitutional grounds.

The portion of the act declared by the court below to be unconstitutional, from which ruling the Commonwealth has appealed, is the provision at the end of the third paragraph above. This provision undertakes to formulate a plan whereby the additional tax arising under the statute is to be charged against the respective beneficiaries of an estate in the same proportions as such distributees would be charged, under the Act of 1919, with the ordinary tax on their respective shares; whereas, if the amount of such additional tax were paid to the federal government instead of the state government, it would, where there is a residuary estate, be charged entirely against the residuary legatees: Newton's Est., 74 Pa. Superior Ct. 361, 368-72.

Among other grounds stated for pronouncing unconstitutional the part of the statute we are now discussing was the fact that there is nothing in the title of the act which, in the opinion of the court below, would give notice that it contains a provision charging the additional tax to be assessed thereunder against particular beneficiaries, instead of against the residuary estate, as the federal tax would have been charged. The title in question indicates that the Act of 1927 is a "supplement" to a prior act, "providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent," and that this supplement imposed "additional taxes equal to federal credits." The title to the act is sufficient to put any one, having an interest in the subject-matter, on inquiry, and this is all that is necessary (Graeff v. Schlottman, 287 Pa. 342, 354), for the provisions are all germane: Com. v. Bell, 288 Pa. 29, 32-3. Moreover, it is not as clear to us as it appears to have been to the court below that the provision under discussion is altogether irrelevant to the title, when we consider that the Act of 1927 is a supplement to the Act of 1919, and that the latter provides not only for the "imposition" but for the "collection" of taxes assessed thereunder; yet so far as the present case is concerned that question was not properly up for decision, since, under the will here involved, after the debts of the estate are paid, the whole balance on hand goes to the five beneficiaries named therein. They are the only parties interested and all are of the same grade. Hence, here no question of tax apportionment or liability as between ordinary and residuary legatees or as to the act raising the inheritance taxes payable by the former and reducing those payable by the latter can arise. Such being the case, the rule squarely applies that a court will not heed objections to the constitutionality of an act unless the complainant is harmed by the particular feature alleged to be in conflict with the Constitution.

The above principle is but one of the many variations of the general rule that "a court [will not] listen to an objection made to the constitutionality of an act by a party whose rights it does not affect" (Cooley's Constitutional Limitations, 8th ed., page 339, and authorities cited in note 2), for only persons materially affected are entitled to raise constitutional questions (see cases cited in 2 R. C. L. Supp. page 21, section 87) and "only those whose rights would be prejudiced by the enforcement of an unconstitutional act will be heard to question its validity" (6 Am. & Eng. Encyc. of Law, page 1090 and cases in note 1). To show the liberal application which has uniformly been made of this general rule, we shall discuss it in a very broad way.

It is correctly stated in 6 R. C. L. 90, § 87, that "Courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is sought to be enforced in the government of a particular case before the court, for the power to revoke or repeal a statute is not judicial in its character."

Section F, 1, 8 Cyc. 787-8, well says: "All constitutional inhibitions against the taking of private property without due process of law and all constitutional guaranties of equal rights and privileges are for the benefit of those persons only whose rights are affected, and cannot be taken advantage of by any other person." See cases cited there in notes 90, 91 and 92.

One of the latest annotations on the general subject in hand appears in Ann. Cas. 1915 C, page 57. It is there said, inter alia: "A person cannot question the constitutionality of a part of a statute which is not applicable to his own particular case, even though other parts of the same statute may affect him"; and at page 61, "A private citizen who has no concern different from or greater than that of any other citizen cannot raise the question as to the constitutionality of a statute relating to public matters."

The rule that one not injured by a statute cannot object to it as invalid was early applied in Pennsylvania in the case of Smith v. McCarthy, 56 Pa. 359, 362-3, where this court said, inter alia: "Even supposing the act to be, as alleged, unconstitutional, private parties cannot interfere by bill to ask it to be so declared, unless on account of some special damage or injury to them in person or property."

In Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472, 476, plaintiff proceeded on a scire facias sur mechanic's lien. After an unsuccessful effort to have the claim stricken off, defendant appealed, contending (page 475 et seq.) that the section of the Mechanic's Lien Act which permitted a lien for equipping "new or old structures" with certain appliances, was unconstitutional because it permitted a lien to be filed against an old structure, whereas, under the law as it stood prior to the act in question, no claim could be filed for such appliances, unless the installation thereof was coincident with the erection of a new structure. The record showed a finding of fact that the structure involved was "a new building"; therefore, it was held, defendant did not fall within the purview of the alleged invalid provision and, not being "affected by the particular feature alleged to be in conflict with the Constitution," could not be heard to attack the validity of the act.

In Com. v. Dollar Sav. Bank, 259 Pa. 138, the Commonwealth brought suit against a savings bank to escheat certain deposits. Defendant filed an affidavit of defense challenging, on several grounds, the constitutionality of the legislation in question. We held that the bank was not entitled to raise any of the constitutional points on which it stood, saying, inter alia (at page 146) that "a court will never heed objections to the constitutionality of an act of assembly unless the complainants are affected by the particular feature alleged to be in conflict with the Constitution; furthermore, it

is always essential for a complainant to show that he occupies such a position."

In St. Bartholomew's P. E. Church Charter, 260 Pa. 284, 288, where the form of a church charter was objected to by a committee composed of members of the general diocese, we said, in affirming a decree granting the charter: "Constitutional questions can be raised only by one materially prejudiced, in person, property or estate, through preliminary steps taken to put into effect the act assailed (Germantown Trust Co. et al. v. Powell, Auditor General, 260 Pa. 181); or by one subject to immediate burdensome penalties for nonobservance of the act, if it should be permitted to go into effect (P. R. R. Co. v. Ewing, 241 Pa. 581); or, of course, by one affected through actual operation of the act."

Gentile v. Phila. & Reading Ry., 274 Pa. 335, 340-41, was a case where an employee of an iron company was mortally injured by a third party. An award to his widow was made, against the iron company, under the Workmen's Compensation Act of 1915, P. L. 736; in view of which award, the employer became a party plaintiff against the tort-feasor, under the right of subrogation given by the Compensation Act. Defendant railroad contended that the act in question was unconstitutional because the subrogation provision was not referred to in its title. In disposing of this contention we said: "It is of no moment to defendant whether the amount recovered from it goes to the widow or the iron company...... As defendant is not hurt by the...... subrogation provision in the Workmen's Compensation Act, it is not necessary to pass upon its constitutionality; for a statute will not be declared invalid at the instance of one not injured thereby."

In Com. v. Alderman, 275 Pa. 483, 487, defendant was sentenced on conviction, under the Woner Act of 1921, of possessing and transporting intoxicating liquors for beverage purposes. He appealed, contending the act was unconstitutional. Overruling this contention, we

said: "On the subject of the Woner Act representing a delegation of legislative power......there is force in appellee's position that the parts of the statute alleged to be thus faulty should be viewed as merely designating a definite source of information, or standard, for the ascertainment of a fact essential to the application of the law. That such a course is permissible was decided by us in Locke's App., 72 Pa. 491, 495, 498; but appellant objects that the criterion for finding the fact in question may be changed by Congress from time to time, and contends that the express contemplation of this possibility by the statute before us manifests a plain purpose to delegate legislative power. Even were the contention just stated viewed with favor (which we are not convinced it should be), still this court would be obliged to hold that appellant cannot raise the suggested objection; for no one is entitled to be heard on a constitutional point which does not prejudicially affect him in the case under review."

In Com. v. Haldemann, 288 Pa. 81, 83, a resident of Cumberland County, Pa., who had paid a license fee for dogs under the Dog Law of 1921, P. L. 522, objected that the act was a revenue measure, and unconstitutional for lack of uniformity, because section 39 thereof excluded the cities of Philadelphia and Pittsburgh from its operation. In pointing out that appellant had paid for the license and was therefore not in a position to raise the question of constitutionality, we said: "A court will never heed objections to the constitutionality of an act of assembly unless the complainant is affected by the particular feature alleged to be in conflict with the Constitution."

In National Automobile Service, Inc., v. Barfod, 288 Pa. 227, 229, we held that to entitle a litigant to be heard to say a statute, under which the court below had acted, was unconstitutional, "it must plainly appear from the facts presented by the record......that the complainant is one who has been directly affected by

what he claims to be the unconstitutional part or feature of the statute in question."

Reeves v. Phila. Suburban Water Co., 288 Pa. 418-20, deals with an application for a writ of error to remove a case to the Supreme Court of the United States. Plaintiffs contended that the Pennsylvania Supreme Court, in its disposition of the case in question, had erred by not deciding certain Acts of Assembly to be unconstitutional because indulging in forbidden discrimination in classification. Refusing the application, we said: "If there exists a discrimination here......plaintiffs do not belong to the class which they allege is discriminated against; ......a person who is seeking to raise the question as to the validity of a discriminatory statute has no standing for the purpose unless he belongs to the class ......discriminated against...... The rule is well established that an act of assembly is always to be accounted constitutional, in all respects and as to everyone, until challenged by some one who is directly affected by a part or feature of the statute claimed to be unconstitutional. In deciding constitutional attacks upon acts of assembly, the courts do not heed abstract propositions; they deal with actual conditions alone, which must not only affect the one complaining of the alleged unconstitutionality but also must affect him by reason of the particular defect that it is claimed makes the act unconstitutional."

In Com. v. Loftus, 292 Pa. 395, 397, 398, the constitutionality of the Act of May 14, 1925, P. L. 759, giving juries the power to fix the penalty in first degree murder cases, was attacked. We said: "Defendant cannot claim to be harmfully affected by the act......because, ......as the law stood before the passage of the Act of 1925, upon conviction of murder of the first degree, the court was required to pronounce sentence of death; the law permitted no alternative. The statute under consideration provides for the discretionary imposition of a lesser penalty, and it can be of no moment to defend-

ant that the discretion is vested in the jury instead of the court......hence the part of the act of which defendant complains cannot be said to have affected him harmfully...... A court will never heed objections to the constitutionality of an act......unless the complainant is affected by the particular feature alleged to be in conflict with the Constitution; and this, of course, means harmfully affected." See also Com. v. Meyers, 290 Pa. 573, 583.

It has long been the rule in the United States Supreme Court that no one may object to the constitutionality of a statute who is not directly affected by it. The decisions are numerous; we shall discuss only two recent cases.

In Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 575-6, the constitutionality of the Ohio Workmen's Compensation Law was attacked. It was alleged that the statute in question contravened section 1 of the 14th Amendment, in that "the classification of employers and employees created by the act is arbitrary and unreasonable." In developing the point with which we are here concerned, the Supreme Court said: "The stress of the present argument,......is upon the feature of the law which takes away the defense of contributory negligence from establishments employing five or more and still permits it to those concerns which employ less than five. Much of the argument is based upon the supposed wrongs to the employee, and the alleged injustice and arbitrary character of the legislation here involved as it concerns him alone, contrasting an employee in a shop with five employees with those having less. No employee is complaining of this act in this case. The argument based upon such discrimination, so far as it affects employees, ......cannot be decisive; for it is the well-settled rule of this court that it only hears objections to the constitutionality of laws from those who are themselves affected by its alleged unconstitutionality in the feature complained of."

Gorieb v. Fox, 274 U. S. 603, 606, was a case in which a resident of Roanoke, Virginia, sought to have a city ordinance declared invalid on the ground that, in requiring him to build his house back a certain distance from the street line, it unconstitutionally deprived him of property. The evidence showed that the city council had issued a building permit to the complainant, not under the general terms of the ordinance, but under a proviso which allowed the council in special instances to permit buildings to be erected closer to the street line than the fixed distance. Disposing of the case, the Supreme Court said: "Whether the provision of the ordinance [complained of] is......a denial of due process, is a question which does not concern petitioner, since ......he has been excepted from the operation of the provision, and it does not appear that the alleged unconstitutional feature of which he complains has injured him or operated to deprive him of any right under the federal Constitution." See also Liberty Warehouse Co. v. Burley Tobacco Growers Coöp. Marketing Assn., 276 U. S. 71, 88.

The foregoing authorities plainly indicate that unless appellants can show that they are harmfully affected by the Act of 1927, they have no case; and, as we have seen, the part of that act providing how the extra tax assessed thereunder shall be charged to the distributees of an estate in no wise affects them. In this connection, however, it may be noted, we agree with the court below that, even if the apportionment clause now under discussion were for any reason to be declared unconstitutional, it would not affect the integrity of the rest of the act; the validity of that clause will be passed upon, if necessary, when some one who is harmed by its application raises the question.

In the present case all property involved is located in Pennsylvania; therefore it follows that, under the rule permitting only those affected to attack the constitutionality of legislation, it does not lie with appellants to challenge the act, as they attempt to do, on the ground

that the measure of the tax under our Act of 1927 might, perhaps, in some instances, depend upon a "gross estate" the tax on which, according to the federal act, would be determined upon all the property of a decedent "wherever situate." It may be added, however, that we are unimpressed by this point; when properly raised, it will not go to the integrity of the act as a whole, but rather to its applicability.

On the question as to whether the combined effect of the federal statute and the Pennsylvania act is to grade our tax, and, if so, whether this can be done without departing from prior decisions and breaching our fundamental law, in Cope's Est., 191 Pa. 1, 21, 23, where this court declared the Direct Inheritance Tax Act of May 12, 1897, P. L. 56, to be unconstitutional, we said that the expression "all taxes," as used in section 1 of article IX of the Constitution of Pennsylvania (requiring that "all taxes shall be uniform upon the same class of subjects," and that all exemptions other than those named in the act "shall be void") "must necessarily be construed to include property tax, inheritance tax, succession tax, and all other kinds of tax, the subjects of which are susceptible of just and proper classification"; further that, by allowing $5,000 exempt property, the act indulged in unlawful classification, and hence was void.

In the case now before us on appeal, the court below recognizes the above rulings in the Cope Case, but distinguishes that case from the present one by saying, "Cope's Estate......is not in point, in that a tax on property was there involved," while here an excise tax is involved. Thus briefly disposing of Cope's Estate, the court below expresses the view that since, under the Act of 1927, the Pennsylvania tax "is fixed by taking 80% of the federal tax less the normal [state inheritance] tax due under the Act of 1919, this means that [in effect, our tax] is graded as is the federal estate tax, [by allowing] an exemption of $100,000, then [charging] 1% on the first $50,000, [and] mounting in graded steps till, in the

instant estate, it reaches 8% on the last $300,000." The court then adds, "The classification for federal purposes has been sustained,—why not for state taxation? Can we not say of the graded rates that at least, to use an expression arising out of the late war, they are based on the ability to pay......? The purpose of the act was to take for Pennsylvania the benefit arising from section 301 (b) of the Federal Revenue Act of 1926. Nothing more need be said justifying the classification. It may be that minor inequalities will arise in the administration of the act; when they do, an equitable basis for resolving them will be found."

Perhaps the distinction made by the court below, in disposing of Cope's Estate, supra, between the Act of 1897, as one avowedly taxing property, and the act now before us, as one taxing the right of succession as distinguished from the property itself (Wagner's Est., 295 Pa. 419, 422) is a valid and controlling one, for the right to take under a will or by inheritance is a privilege, and, in Knisely v. Cotterel, 196 Pa. 614 (a later case), we in effect decided that the part of the Constitution here insisted on did not govern the taxation of privileges. Again, it may be that, so far as classification is concerned, the Act of 1927 can be sustained on the broad ground that the graded classification of the federal act is not as a matter of fact read into our own act, in the manner suggested in the above quoted excerpt from the opinion of the court below; for it must be kept in mind that Pennsylvania has in no sense formally adopted the federal graded scheme of taxation. The only way in which the federal statute figures in connection with our act is that the application of the latter depends on the collateral fact of whether a particular estate about to be assessed a Pennsylvania transfer tax is subject to and has been assessed a federal tax (for theory cases, see Com. v. Alderman, 275 Pa. 483, 487, and cases there cited). If that view of the matter is taken, the sole classification here involved is the indirect one that, in considering the ap-

plicability or nonapplicability of our Act of 1927, all estates subject to Pennsylvania law fall, in a psychological sense, into three classes: (a) Estates subject to the ordinary Pennsylvania inheritance tax, but not large enough to be subject to the federal tax, (b) estates where the ordinary Pennsylvania inheritance tax is sufficiently large in itself to cover or exceed the 80% federal allowance, and (c) estates large enough to be subject to federal inheritance tax, but where the ordinary Pennsylvania tax is less than the 80% federal allowance. The Act of 1927 applies only to the last class; and, it may well be that the court below had good reason for saying, as it did, that our Constitution of 1873, and its alleged prohibition against classification for taxation graded according to amounts involved, never contemplated a situation such as that created by the particular feature of the federal act with which we are here dealing.

It is unnecessary to continue the discussion along this line, however, for none of the points of attack against the Act of 1927, made by appellants are involved in this case, since, as before said, appellants are in no wise injured by any provision of that statute; indeed, so far as the main feature of this act is concerned, it is difficult to perceive how it can harm anyone taking estates or having an interest in estates taxed thereunder, because, in each instance, if the additional tax created by the act was not paid to the Commonwealth, the same amount would have to be paid to the national government, and when paid to the Commonwealth, the amount in question is allowed by the national government to the estate making the payment. As this court said in Gentile v. P. & R. Ry. Co., supra, it is of no moment to complainant whether the amount to be paid goes to one person or another, so long as his liability is not prejudicially altered; the same principle applies here.

It has been suggested that, if the Act of 1927 should, in any subsequent case, be declared unconstitutional,

those in the position of the present appellants, having accepted an allowance from the national government on the basis of the validity of this statute, might subsequently be obliged to make full payment of such allowance to the national government, and in such event appellants would be harmed; but since, as previously said, it is inconceivable that anyone paying the tax set up by the Act of 1927 could be so injured thereby that he would be in a position to attack the constitutionality of the act, it is equally inconceivable that the act can be declared unconstitutional, so far as its main feature is concerned. Then, in addition, there is no more reason for assuming that, sometime in the future, the act now before us will or may be declared unconstitutional than for making such an assumption as to any other tax statute which has been or may be enacted. If, in some subsequent case, such an event should come to pass, the act would, nevertheless, be valid beyond attack so far as the present case is concerned: see Phila. v. Ridge Ave. Ry. Co., 142 Pa. 484, and the explanation of that case in an article on Res Judicata, volume XXXVIII, No. 3, Yale Law Journal, (January, 1929), pages 299, 301-2. In this connection, it may be noted that counsel on both sides stated at bar that, when the proper federal authorities were notified of the present controversy, they took the position that the national government had no interest. It must be assumed that this will continue to be the attitude of the national government, for there is no question here as to the constitutionality of federal law; all questions raised by either side concern the validity of the law of Pennsylvania, and, under the well established principles discussed in the last mentioned authority, whatever we decide to be our law controls this case for all time to come, without regard to what possibly may in the future be ruled in other tax cases. A change in the judicial view of the law by a subsequent decision could not amount to more than a change in the law by legislation, which, of course, would not retroactively

affect those whose rights had been previously adjudged. Such being the governing rule of law, it must be assumed that the national government, as well as all others, will abide by it; but as previously said there is no good reason for anticipating that a future attack on the general constitutionality of the present act will succeed.

In conclusion, we repeat that the court below, instead of attempting to solve constitutional points which were not properly before it, should have refused to consider those points, on the ground that appellants, not being harmed by anything contained in the Act of 1927, were not in a position to attack its constitutionality. Though counsel in this case filed a stipulation that we might "pass upon the constitutionality of the said act in its entirety without limit to the particular features thereof which may pecuniarily affect the appellants," we have no power so to do. On the present record, the ruling of the court below that a certain part of the Act of 1927 was invalid, cannot be approved; as before said, that point will be passed on when raised by someone who has been harmed by application to him of the provision in question.

The final decree sustaining "the appraisement and imposition of the tax" is affirmed; costs to be paid out of the estate of decedent.