## Caflisch's Estate

*George M. Mason,* for Commonwealth.
*Gunnison, Fish, Gifford & Chapin,* for executors.

WAITE, P. J., November 9, 1933.—This matter comes before the court on the audit of an account of Margaret E. Caflisch and Jacob C. Caflisch, executors of the estate of Jacob C. Caflisch, alias J. C. Caflisch, deceased, filed January 13, 1933.

The Commonwealth of Pennsylvania has presented a claim for an estate tax in the sum of $44,589.90, under the provisions of the Act of May 7, 1927, P. L. 859. The amount of this tax is made up as follows: $27,524.63 estate tax claimed, and $17,065.27 penalty on same, figured at the rate of 12 percent per annum from July 9, 1928, being 1 year after decedent's death, to September 9, 1933.

J. C. Caflisch, a resident of the Borough of Union City, Pa., died July 9, 1927. On July 14, 1927, his last will and testament was probated in the office of the register of wills of this county. Immediate steps were taken to have an inventory made, appraisers were appointed, and the inventory was made as of July 19, 1927, and the same was filed in the register of wills' office of this county on July 27, 1927.

On September 10, 1927, an appraisement for transfer inheritance tax purposes was filed, and on September 30, 1927, less than 3 months from the date of the death of J. C. Caflisch, a transfer inheritance tax in the amount of $17,921.30 was paid, as is evidenced by a receipt for that amount filed with the account. The receipt is signed by the then register of wills of Erie County, and sealed and countersigned by the Auditor General of the Commonwealth of Pennsylvania.

From the history of the case thus far, it is evident that no delays were intended on the part of the executors. It is a fact that the account was not filed until

more than 5 years had lapsed, but there is nothing unusual about that. It was explained in the testimony taken at the time of the audit that there was sufficient reason for the postponing of the filing of the account. The assets of this estate were somewhat involved in litigation, and large sums due the estate were found to be uncollectible. After creditors were paid, the only two who could be injured by the postponing of the filing of the account are the widow and the son, who are the only legatees under the will, and they are not complaining.

After the filing of the account, to wit, August 29, 1933, a so-called "supplemental appraisement" was filed in the office of the register of wills, setting forth the amount of the estate tax due the Commonwealth of Pennsylvania and the manner in which same was arrived at. On the same date, a claim for estate tax in the sum of $27,524.63, together with a penalty in the sum of $17,065.27, or a total of $44,589.90, was made upon the executors.

This claim is based on the provisions of the Act of May 7, 1927, P..L. 859, which provides for the collection of the estate tax as follows:

"That in order that the Commonwealth may receive the benefit of section three hundred and one (b) of the Federal Revenue Act of nineteen hundred and twenty-six, or any other legislation of a similar kind or enacted for a like purpose, which grants a credit on the Federal estate tax for inheritance taxes and transfer inheritance taxes paid to the state governments, additional transfer taxes for State purposes are hereby imposed upon the transfer, in trust or otherwise, of any property taxable under the provisions of the transfer inheritance tax laws of this Commonwealth, . . . Such taxes shall be imposed and be collected, in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth, in the following cases, viz: Whenever in any estate the total tax paid or payable to the Commonwealth and any other States or territory, at the rates fixed under the inheritance tax law, shall be less than the total credit allowed by the Federal law for taxes paid to the states, then the tax imposed by this act upon the transfer of such property shall be an amount equal to the difference between the total credit, allowable by the Federal law for taxes payable to the state governments, and the total taxes actually paid or payable to the Commonwealth and any other state or territory under the inheritance tax laws. . . ."

The Federal Act of February 26, 1926, c. 27, sec. 301, 44 Stat. at L. 9, 26 U. S. C. §§1092, 1093, provides as follows:

"(a) In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act, whether a resident or nonresident of the United States; . . . [Schedule of Rates]

"(b) The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304."

When an estate exceeds the amount of $100,000, so as to come under the provisions of the Federal Estate Tax Act of 1926, the orderly procedure is first to determine and pay the normal transfer inheritance tax due the Commonwealth of Pennsylvania. The proper report should then be filed with the Federal Government and a copy thereof filed with the register of wills, as is now provided

by the Act of May 16, 1929, P. L. 1782. If, after deducting the $100,000 specific exemption allowed by the Federal Government and the 80 percent credit allowed for inheritance taxes paid to this Commonwealth and to any other State or Territory, it is found that the amount of inheritance taxes paid to the Commonwealth of Pennsylvania and to any other State or Territory does not equal the said 80 percent credit allowed, then the estate shall pay to the Federal Government the remaining 20 percent of the amount determined to be due and shall pay to the Commonwealth the difference between the 80 percent credit allowed and the normal transfer inheritance tax already paid to the Commonwealth. If, by error, more than 20 percent is paid to the Federal Government, claim for refund of the overpayment can be made within 3 years after the payment of the amount sought to be refunded. See section 319, art. XCIX, Federal Revenue Act of 1926. But such erroneous payment does not exempt the estate from payment of any estate tax due the Commonwealth of Pennsylvania under the Act of 1927.

In Knowles' Estate, 295 Pa. 571, 576-577, Mr. Chief Justice Moschzisker, discussing this legislation, said:

"The United States Revenue Act of 1926 provides, by section 301 (b), 44 Stat. 70, (U. S. C. A. Tit. 26, section 1093) as follows: 'The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any state or territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed . . . shall not exceed eighty per centum of the tax imposed.' By this statute, the federal government has declared it to be the national policy that the net value of all estates (in excess of $100,000, that amount being exempt: Section 303 (a) 4, 44 Stat. 72, U. S. C. A. Tit. 26, section 1095) shall, before distribution to the persons entitled thereto, be reduced by certain percentages, progressively levied as succession taxes, but it is willing that the several states shall indirectly profit by this system; to that end, the federal statute in effect provides that, in all instances where a state imposes inheritance taxes, the federal government will allow, to those paying such local inheritance taxes, the amount thereof up to a sum equal to 80% of its own inheritance taxes, retaining the right to collect only so much of the federal tax as may exceed the sum thus relinquished. This is a method of distributing to the several states moneys collectible by the national government from their taxables, and the provision in question is not intended to either burden or benefit the taxpayer. Whenever a state does not see fit to take advantage of the situation thus created, the national government will collect the entire 100% of its assessed federal inheritance taxes.

"When this Federal Revenue Act,—with its extraordinary provision, which gives the states an opportunity to increase their own revenues, without cost to those who pay them taxes, by passing legislation pursuant to it,—became effective, the legislature of Pennsylvania, to avail the Commonwealth of the provision in question, supplemented the Inheritance Tax Act of June 20, 1919, P. L. 521, by the Act of May 7, 1927, P. L. 859. . . ."

The Pennsylvania statute referred to provides that the estate tax shall be collected in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth. The estate of J. C. Caflisch, which exceeds the sum of $100,000, comes under the provisions of the Act of June 20, 1919, P. L. 521, and its supplements, section 38 of which provides:

"If the tax is not paid at the end of one year from the death of the decedent, interest shall be charged at the rate of twelve per centum per annum on such tax. Where, because of claims made upon the estate, litigation, or other unavoidable cause of delay, the estate of any decedent or any part thereof cannot be

settled up at the end of the year, interest at the rate of six per centum per annum shall be charged upon the tax arising from the unsettled part thereof, from the end of such year until there be default. Where real or personal estate withheld by reasons of litigation or other cause of delay, in the manner aforesaid, from the parties entitled thereto, subject to such tax, has not been productive to the extent of six per centum per annum, the proper parties shall not pay a greater amount as interest to the Commonwealth than they have realized or shall realize from such estate during the time the same has been or shall be withheld as aforesaid."

Supplementing the provisions of section 15 of the Act of 1919, providing for ascertaining and collection of inheritance taxes, the Act of July 12, 1923, P. L. 1078 provides:

"For the purpose of securing any needed information in the appraisement of property belonging to a resident decedent, or in the collection of any tax due, the register of wills or his deputy, upon the application of the appraiser or parties in interest, is hereby given the power to issue subpœnas to compel the production of books, papers, or documents by any person possessing the same, as well as to compel the attendance of witnesses before the appraiser, not earlier than three days from the service of such subpœna, at a convenient place to be selected by the appraiser; and for the purpose of such hearing, the register of wills or his deputy is given the power to administer oaths or affirmations. If any person being subpœnaed as aforesaid shall refuse or neglect to appear as commanded, the register shall have the power to issue an attachment against said witness to compel his or her appearance, according to the practice of the courts, directed to the sheriff or any constable of the proper county for execution. Witnesses appearing before the appraiser in obedience to subpœna aforesaid shall be entitled to the same fees and mileage as are allowed by law to witnesses in the orphans' courts.

"In the event the register of wills fails within the time herein mentioned to take the necessary proceedings as above outlined to secure the filing of the inventory or schedule of the property of a resident decedent, or to collect the tax due, then the Auditor General shall have all the powers herein vested in the register of wills and, at his option, may institute such proceedings, and shall charge to said register of wills and deduct from any commissions or fees otherwise due him all costs, expenses, and attorney's fees incurred by the Auditor General in connection with such proceedings."

The executors made proper return of the assets in their hands, but no effort to determine how much of this was subject to Pennsylvania estate tax was made until August 29, 1933, when a supplemental appraisement was filed and estate tax assessed, after the 3-year period in which to make claims for refund from the Federal Government for tax erroneously paid had expired, and it was then too late to make such claim. At the time of decedent's death, the executors were not required to file a copy of their Federal report, as is now provided in the Act of 1929.

The instructions to the register and to the appraiser on the form of appraisement filed in the original instance, i. e., September 10, 1927, are that a copy of the appraisement shall be filed with the Auditor General. We will therefore presume that this was done, and that the Auditor General had notice of the filing of the appraisement and of the fact that, as the estate exceeded the amount of $100,000, it would be subject to a Federal estate tax and possibly to a Pennsylvania estate tax.

Following the filing of the first appraisement, which was on September 10,

1927, assuming that the register of wills was informed of the passage of the Act of 1927, which was enacted 2 months and 2 days prior to the date of death of J. C. Caflisch, and which imposes the duty of collection of the estate tax, and that the register "failed in his duty" to take the necessary action to have a supplemental appraisement made and to collect the estate tax, inasmuch as the provisions for collecting such estate tax are the same as provided in the Act of 1919 and its supplements, then the duty to proceed with the ascertainment and collection of such estate tax rested with the Auditor General, as provided by the Act of July 12, 1923, P. L. 1078, 1081, which is a supplement to the Act of 1919.

The estate of J. C. Caflisch paid the Federal estate tax in full without deducting the 80 percent credit allowed for taxes paid or payable to this Commonwealth, and is still charged with the payment of the estate tax to the Commonwealth of Pennsylvania. This in itself seems a sufficient penalty for its error, and it does not seem just or equitable that the estate should be further penalized by requiring payment of the penalty imposed by reason of the delay in filing the appraisement and assessing the tax, when it is now too late to claim a refund from the Federal Government, and especially so when the taxing authorities themselves were negligent in their duties. There is no evidence to show that the executors refused to pay this tax. When the register failed to act, the Auditor General should have acted. A further protection for the collection of this tax might have been had by bringing suit for the collection of same before the lapse of 5 years, as provided in the Act of June 20, 1919, P. L. 521, sec. 39, as amended by the Act of May 16, 1929, P. L. 1795, 72 PS §2443:

"The lien of all taxes imposed by this act shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith. All such taxes shall be sued for within five years after they are due; otherwise they shall be presumed to have been paid and cease to be a lien as against any purchasers of real estate: Provided, however, At any time within said five-year period, if the inheritance taxes on the realty appraised are not paid, the Department of Revenue shall have power to file a certificate, under its seal, certifying to such non-payment, which when filed in the prothonotary's office of the county where such real estate is situated, shall become a lien against decedent's real estate for a further period of five years from the date of such filing, and such lien shall be indexed in the judgment index in the name of the decedent as defendant."

The failure to commence suit will not relieve the executors from the payment of this tax: Sheirich Estate, 7 D. & C. 433.

The testimony further shows that the final figures as to the amount of Federal tax due have not been determined, and that a refund from the Federal tax department is pending. Not until this is finally determined can the Commonwealth ascertain the amount of 80 percent of this tax.

And now, to wit, November 9, 1933, after careful consideration of the facts of this case, it is ordered and decreed that the executors pay to the Commonwealth of Pennsylvania the additional amount of estate tax due, without penalty.                                    From Otto Herbst, Erie, Pa.