414

## Baker Estate

*Everett K. Dilworth*, for estate.

*Catherine R. Barone*, Deputy Attorney General.

OPINION BY SCHWARTZ, J., JUNE 2, 1980:

This case comes before the court en banc by virtue of exceptions filed with respect to the imposition of the Pennsylvania Estate Tax pursuant to Section 421 of the Pennsylvania Inheritance Estate Tax Act of 1961 (72 P.S. 2485-421). The estate alleges inter alia, that: 1) Section 421 of the Pennsylvania Act limits the Pennsylvania Estate Tax to the difference between the Federal credit actually allowed by the Internal Revenue Service and the state inheritance tax paid; 2) the Pennsylvania Estate Tax is unconstitutional because it violates the uniformity clause of the Pennsylvania Constitution; 3) the Estate Tax is unconstitutional because it imposes a tax on property with a situs outside the Commonwealth of Pennsylvania; 4) the Commonwealth is barred by laches as well as equitable considerations because the statute of limitations for claiming a refund of Federal Estate Tax paid has expired.

Jane Torrance Baker died on July 17, 1963, appointing her son, F. J. Torrance Baker, as her executor. In October of 1964, the executor filed a Federal estate tax return with the United States government, and on November 19, 1964, forwarded a copy of the estate's Federal estate tax return to the Pittsburgh office of the Pennsylvania Department of Revenue.

Sometime prior to July 17, 1964, the executor paid, on account, Pennsylvania inheritance tax in the amount of $25,900 leaving a balance of $2,270.14. On January 13, 1969, the Internal Revenue Service submitted a final closing letter fixing the estate's gross Federal estate tax at $529,515.77. On June 6, 1977, more than eight years later, the executor submitted a copy of the closing letter to the Pennsylvania Department of Revenue. On that same date the estate's Inheritance Tax Report and Appraisement and Statement of Debts and Deductions was filed by the executor. On June 9, 1977, the Department of Revenue filed its official appraisement of the real estate and personalty. Thereafter, on December 5, 1977, the Pennsylvania inheritance tax was assessed at $29,970.15 which, after credit for payments on account, left a balance due of $2,770.15, plus interest from January 17, 1965. By stipulation, that interest was agreed to commence July 17, 1964. Also on December 5, 1977, the Inheritance Tax Division of the Department of Revenue filed its Estate Tax Assessment, computing same to be $36,683.19 pursuant to the estate's original Federal estate tax form as submitted in 1964 and an additional $3,073.80 after reconciling the returns with the Federal closing letter. After hearing before the Honorable William Rahauser on August 7, 1979, the court entered judgment against the estate for inheritance tax in the amount of $2,770.14 with interest from July 17, 1978, for Pennsylvania estate tax in the amount of $36,683.19 with interest from July 15, 1965, and for additional Pennsylvania estate tax in the amount of $3,073.80 with interest from February 13, 1969. Thereafter, the Commonwealth conceded that the estate had not been credited with $1,644, representing the amount of inheritance tax paid to the Commonwealth of Massachusetts thereby reducing the Pennsylvania estate tax claim to $37,776. It is from the order of Judge Rahauser, corrected as aforesaid, that this matter comes before the court en banc.

Section 421 of the Inheritance and Estate Tax Act of 1961 provides as follows:

"In the event that a Federal estate tax is payable to the United States upon the estate of a decedent, who was a resident of the Commonwealth at the time of his death, and the inheritance tax, if any, paid to the Commonwealth (disregarding interest or the

amount of any discount allowed under Section 716 of this Act), plus the death taxes (not including any death taxes expressly imposed to receive the benefit of the credit for state death taxes allowed by the Federal estate tax law) paid to other states or territories in respect to the property of the decedent is less than the maximum credit for state taxes allowed by the Federal estate tax law, a tax equal to such difference is hereby imposed."

Section 2001 of the Internal Revenue Code of 1954 (in effect for purposes of this estate) sets forth the amount of tax based upon the taxable estate. Section 2011(a) I.R.C. provides a credit for the tax imposed in Section 2001 I.R.C. for taxes actually paid to any state for estate, inheritance, legacy or succession taxes. Section 2011(b) I.R.C. set forth the maximum credit allowed for said state taxes. Section 2011(c) I.R.C. provides that "the credit allowed by this section shall include only such taxes as were actually paid and credit therefor claimed within four years after filing of the estate tax return." Thus, in order to take advantage of the credit in Section 2011(b) I.R.C., the estate must make actual payment of the aforesaid taxes. In the case before the court, the only taxes actually paid by the estate within the aforesaid four year period, was $25,900. Accordingly, therefore, the only credit received by the estate for Federal estate tax purposes was the $25,900.

In the case, sub judice, the Federal estate tax closing letter was dated January 13, 1969. However, a copy of the said letter was not submitted to the Department of Revenue until the executor filed his Pennsylvania Inheritance Tax Report and Appraisement and Statement of Debts and Deductions on June 6, 1977. It was then and only then that the Commonwealth of Pennsylvania could properly assess taxes due in the case.

The exceptant first alleges that in computing the Pennsylvania estate tax pursuant to Section 421, the phrase, "maximum credit for state taxes allowed by Federal estate tax law," is the amount *actually* allowed on the particular estate and not the amount contained in the Schedule at 2011(b) I.R.C. Following the executor's argument in the case at bar, the amount actually paid and, therefore, actually allowed as a credit would be the state inheritance tax paid to the Common-

wealth of Pennsylvania or $25,900. The amount to be subtracted from this figure is the state inheritance tax paid to Pennsylvania and any other state or territory in respect to the property of the decedent. Thus, in this case, the amount actually paid to other states would include the $1,664 paid to the Commonwealth of Massachusetts which when added to the $25,900 paid to the Commonwealth of Pennsylvania would result in a negative $1,644 and, accordingly, no Pennsylvania estate tax.

If the executor's interpretation of Section 421 is correct, no Pennsylvania estate tax is ever due. Pursuant to Section 421, the Pennsylvania estate tax is computed by subtracting the amount of the inheritance tax paid to the Commonwealth or other state from the maximum credit for state taxes allowed by the Federal estate tax law. The executor would argue that, in accordance with 2011 (a) I.R.C., the maximum allowed is equal to credit actually received which is equal to the amount actually paid. Thus, in all cases (except where the decedent dies possessed of property outside the Commonwealth of Pennsylvania) the estate tax would be zero because the subtrahend and the minuend[1] would both be based upon the amount of death taxes actually paid.[2] Obviously, the legislature did not intend such a result. The only reasonable interpretation of Section 421 requires that the term "maximum credit for state taxes allowed by Federal estate tax law" be interpreted to mean the maximum credit as set forth in the schedule in 2011 (b) I.R.C.

The executor next argues that the term "allowed" in Section 421 must be defined consistent with its application in the Internal Revenue Code. Specifically, he argues that the word "allowed" means actually allowed by the Internal Revenue Service. Yet, by the very title of his argument in his brief, he has demonstrated the difference between the usage of the word "allowed" in Section 421 and the usage of the word in the Internal Revenue Code. Section 421 states, "al-

---

1. In the mathematical equation for example, 5—3=2, 5 is the "minuend", 3 is the "subtrahend" and 2 is the "difference".

2. Under this analysis, in cases where the decedent dies possessed of property with a situs outside Pennsylvania, the resulting Pennsylvania Estate Tax would be a negative figure.

lowed by the *Federal estate tax law"*, whereas, the heading for the executor's argument in his brief is "allowed by the *Internal Revenue Service."* In every example set forth in the very able brief of the executor, the use of the word "allowed" if accorded its proper interpretation, would be followed by the term, "by the Internal Revenue Service." In the case of *Virginia Hotel Company v. Helvering,* 319 U.S. 523 (1942), "allowed" is interpreted as actually allowed in the return as finally accepted by the Internal Revenue Service. In Section 421, the legislature has specifically stated "allowed by the Federal estate tax law." Thus, in addition to the absurd result which the executor's interpretation would fashion as set forth above, the plain language of Section 421 requires that the phrase, "maximum credit for estate taxes allowed by Federal estate tax law" be interpreted to mean that amount set forth in Section 2011(b) based upon the taxable estate.

The executor next alleges that Section 421 is unconstitutional. It has long been the law of this Commonwealth that

"a court will not heed objections to the Constitutionality of an Act unless the complainant is harmed by the particular feature alleged to be in conflict with the Constitution." *Knowles's Est.,* 295 Pa. 571.

Thus, prior to any examination of the constitutionality of Section 421, there must first be a finding that the party raising such an objection would be harmed by its application. In the case at bar, the executor of the estate failed to pay the Pennsylvania estate taxes within four years of filing the Federal estate tax return. That failure resulted in the inability to obtain credit for said payment when computing the amount of tax payable to the Federal government for Federal estate tax purposes. It is beyond dispute that the very amount that the Commonwealth seeks in this matter was paid to the Federal government only because the executor failed to first pay it to the Commonwealth within the prescribed time period and receive the resulting credit from the Federal government. The estate is clearly harmed and therefore, we must now determine whether or not the alleged defect caused the harm.

The executor's initial attack on the constitutionality of the Act is that it violates Article 8, Section 1 of the Pennsylvania Constitution requiring that,

"all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax . . ."

It is clear that in Pennsylvania the requirement of uniformity applies to all taxes: *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316. Furthermore, the courts of Pennsylvania have been consistent in finding that graduated taxes violate Article 8, Section 1: *Kelley v. Kalodner,* 130 Pa. 180; *American Stores Company v. Boardman,* 336 Pa. 1939. The estate argues that because the Pennsylvania estate tax is based upon 2011(b) I.R.C. and because that section sets forth a graduated tax, the tax imposed thereby violates the proscription against uniformity. The threshold question, however, is whether the alleged graduated aspect of the tax causes the harm.

In *Mesta Machine Company v. Dunbar Furnace Company,* 250 Pa. 472, the plaintiff attempted to challenge the constitutionality of the Mechanics Lien Act because it allowed a lien against new structures but not old structures. The record revealed that the structure involved in the case was in fact new and the court held that the defendant was not affected by the particular feature alleged to be in conflict with the Constitution and as such, could not be heard to attack the validity of the Act: *Knowles's Estate,* supra at 582.

In its application to the case at bar, the alleged graduated tax aspect of Section 421 does not create the harm to this estate. In *Reeves v. Philadelphia Suburban Water Company,* 288 Pa. 418, the court stated,

"In deciding constitutional attacks upon Acts of Assembly, the courts do not heed abstract propositions; they deal with actual conditions alone which must not only affect the one complaining of the alleged unconstitutionality but also must affect him by reason of the particular defect that it is claimed makes the act unconstitutional."

It is the failure of Pennsylvania to provide a corresponding credit for payment of the Federal estate tax that causes the harm and not the graduated tax aspect.

In fact, *Knowles's Estate,* supra involves the Act of 1927, which was the predecessor of Section 421 and does not differ in any material aspect as would cause any distinction from the case at bar. The Supreme Court therein stated,

"Indeed, so far as the main feature of this Act is concerned, it is difficult to perceive how it can harm anyone taking the estates

or having an interest in estate's tax thereunder, because, in each instance, if the additional tax created by the act was not paid to the Commonwealth, the same amount would have to be paid to the national government, and when paid to the Commonwealth, the amount in question is allowed by the national government to the estate making the payment. As this court said in *Gentile v. P. & R. Railway Company*, supra, it is no moment to complainant whether the amount to be paid goes to one person or another so long as his liability is not prejudicially altered; the same principle applies here." Supra at page 590.

The legislation involved does nothing more than redirect payments that would have gone to the Federal government to the state government. It imposes no additional burden on a taxpayer if the estate is properly administered.

"But since as previously said, it is inconceivable that anyone paying the tax set up by the Act of 1927 could be so injured thereby that he would be in a position to attack the constitutionality of the Act. It is equally inconceivable that the Act can be declared unconstitutional so far as its main feature is concerned." *Knowles's Estate*, supra at page 591.

The executor also alleges that the statute is unconstitutional because it imposes a tax which, in effect, taxes the property of a decedent outside the Commonwealth of Pennsylvania. He argues that since the tax relies upon the entire Federal credit which, in turn, is based upon the gross estate for Federal tax purposes, then the gross estate would include property outside the Commonwealth of Pennsylvania. But once again, for the reasons stated previously, it is not this feature of the act that causes the harm. The harm is created by the lack of a credit on the Pennsylvania estate tax for payment of the Federal estate tax resulting, in this case, in double taxation.

The duplicate tax on the same property, even though it arises here by inadvertence or neglect on the part of the executor, is nonetheless not constitutionally proscribed. The able brief of the Commonwealth of Pennsylvania points out that *Frick v. Commonwealth of Pennsylvania*, 268 U.S. 474, 45 Supreme Court 601 (1925) held that the states need not give credit for Federal estate taxes paid.

"While the Federal tax is called an estate tax and the state tax is called a transfer tax, both are imposed as excises on the transfer of property from a decedent and both take effect at the instant of

transfer. Thus both are laid on the same subject and neither has priority in time over the other. Subject to exceptions not material here, the power of taxation granted to the United States does not curtail or interfere with the taxing power of the several states. This power in the two governments is generally, so far concurrent, as to render admissable for both, each under its own laws and for its own purposes to tax the same subject at the same time . . ." *Frick v. Comm. of Pennsylvania,* supra, at page 608.

Finally, the executor argues that the Department of Revenue is barred by laches and equitable considerations from assessing the Pennsylvania estate tax due to the expiration of the statute of limitations for claiming a refund of the Federal estate tax paid. This argument must fail because the Pennsylvania Department of Revenue is without fault for the delay in making its assessment. We are satisfied from the record that the delay was caused by the failure of the executor to file the Pennsylvania Transfer Inheritance Tax Report and Appraisement, a Schedule of Debts and Deductions and the Federal estate tax closing letter until June 6, 1977. Accordingly, the Commonwealth cannot be barred from assessing a tax which was dependent upon returns prepared by the executor of the estate when said returns were not available to the Commonwealth until well after the statute of limitations for claiming a refund of Federal estate tax had expired.

For the reasons stated herein we affirm Judge Rahauser's Decree of August 7, 1979 with appropriate credits for the amount of Massachusetts inheritance tax paid.