Susquehanna Collieries Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued April 24, 1939. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ. ▮▮▮▮▮▮▮

*Henry A. Gordon,* for appellant.

*Clair Groover,* Special Deputy Attorney General, for
appellee.

OPINION BY PARKER, J., September 27, 1939:

This is an appeal by Susquehanna Collieries Com-
pany from an order of the Unemployment Compensa-
tion Board of Review dismissing the appeal of that com-
pany from a decision of a referee affirming an award

of compensation by Department of Labor and Industry to John S. Boncal and dismissing the appeal of the company. All parties agree that the sole question involved in the present appeal is whether the company, the employer of claimant, had a right of appeal from the decision of the department. The question presented is one of first impression in this state and we have been able to get little aid from the decisions in other jurisdictions owing to the different provisions contained in other unemployment statutes.

The claimant, John S. Boncal, was one of 2,700 employees of the Susquehanna Collieries Company who left their employment at the same time and sought compensation. The employer contended that the claimant was not entitled to compensation for the reason that his unemployment was due to his voluntarily leaving work and that there was not present a condition where by continuing in employment he would be compelled to "accept wages, hours or conditions of employment not desired by a majority of the employees in the establishment or the occupation." The claimant admitted that he left work of his own volition but insisted that it was because of a labor dispute of such a nature that he was still entitled to compensation. We are concerned not with the merits of the contest but with the simple question as to whether the statute gives to the employer of the claimant a right to appeal.

The department awarded compensation and the company appealed from that decision. A referee affirmed the award holding that the appellant was not an "affected party" and therefore not entitled to an appeal and that an industrial dispute existed. On appeal to the board, that body affirmed the decision of the referee solely on the ground that the company had "no standing under the Unemployment Compensation Law to take such appeal" and dismissed the appeal.

The Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897 (43 PS §751), pro-

vides that the Department of Labor and Industry shall promptly examine claims for unemployment compensation and determine whether the claim is valid; if so, when it shall commence, the weekly compensation payable, and the maximum duration thereof. Section 501 (43 PS §821) reads in part as follows: "The claimant and other affected parties shall be promptly notified of the decision [by the department] and the reasons therefor. Unless the claimant or other affected parties file an appeal from such decision with the board within ten calendar days after such notification was mailed to his last known post office address, and applies for a hearing, such decision of the department shall be final and compensation shall be paid or denied in accordance therewith." When an appeal is taken the referee is required to afford the parties a hearing and affirm, modify, or reverse the findings of fact and decision of the department. From such decision a further appeal is allowed to the board (§502, 43 PS §822). An appeal from the board to the Superior Court "may be taken by any party claiming to be aggrieved, but only after he has exhausted his remedies before the board": §510 (43 PS §830).

It will be observed that the statute provides that when the department makes a decision on an application for compensation it shall give notice of the decision and the reasons therefor to "the claimant and other affected parties" and then provides for an appeal by "the claimant or other affected parties." The legislature not only provided for appeals from the decisions of the department but also recognized the fact that there was someone else interested in the decision besides the claimant when it provided that notice of the department's decision must be given to "other affected parties" and fixed the time for taking an appeal as within ten days from such notification. It is clear that the legislature concluded that there were other persons who could answer to the description, "affected parties", and

that such persons should have the right to intervene and appeal. The legislature did not intend a result that is impossible of execution: Statutory Construction Act, May 28, 1937, P. L. 1019 (46 PS §552). The natural inquiry ensues as to who are affected parties. Before answering that query, we will call attention to the purpose of the act and the persons affected.

The statute makes a radical advance in social legislation intended to promote the health, morals, and welfare of the people of the Commonwealth and to prevent indigency. It is a companion act to the Social Security Act passed by the Congress August 14, 1935 (42 USCA §301). By the action of the state and federal governments, moving with a common purpose, a fund is provided from which compensation is to be paid for a fixed period to those who have had employment but are at the time unemployed, for those willing to work who cannot find employment. That fund is to be supplied by assessments on the employer and by so-called contributions by the federal government. The present burden is placed on the employer. All the people of the state share in the benefits of this legislation but the burden of furnishing the means to relieve the situation is placed on the employer. The legislature determined that the employer had an interest and responsibility above that of all other persons.

While the present and actual assessment laid on the employer is not increased by the payment of a claim to one unemployed person, he is vitally interested in knowing that payments made from the fund are confined to such objects as are contemplated by the statute for his financial responsibility will be measured by the liabilities created, if the declared policy of Congress and legislature is continued. It may be that this of itself would not be sufficient to give such employer a right of appeal. That matter, however, is one proper for consideration in determining what the legislature meant by an affected party. The employer certainly is affected by

payments from the common fund more directly than any other taxpayer or citizen.

The special interest of the last employer, that is the employer at the time the unemployment arose, in the decision on a claim made by his own employee, and the fact that such employer is affected by such decision, are disclosed by a number of the specific provisions in the statute. That law makes the right to compensation dependent on the circumstances under which the relation of employer and employee has been terminated. It deals particularly with certain labor disputes making the time for the beginning of the payment of compensation, as well as the right to any compensation, where the dissolution has been voluntary upon the part of the employee, dependent upon the relations between the employer and his employee at the time when that employment ceased. It exerts pressure on the employer to prevent or reduce periods of unemployment.

Turning our attention to the provisions for the administration of the act, we find that the employer of a particular claimant is necessarily consulted in determining whether the termination of the employment has been voluntary and whether a labor dispute affecting the right of compensation has had a part in ending the employment. An efficient execution of the law would be impossible without securing information from the claimant's last employer. In every case the right to compensation is dependent upon the circumstances under which the claimant lost his employment. If there is any contest or room for contest, the employer of the claimant necessarily becomes an actual participant in the controversy. He becomes more than a witness or a source of information.

The appellee, however, calls attention to that portion of section 501 which provides that the department shall give notice of its decision to the claimant and other affected parties and to the fact that in the next sentence those are the persons who are given a right of appeal,

and then suggests that it would be unreasonable to assume that the legislature intended that every employer in the Commonwealth who had contributed to the fund should be notified of the decision on each case. It must be conceded that the giving of such notice would entail such labor, expense, and delay as to defeat the very purpose of the act. "The Legislature does not intend a result that is absurd, impossible of execution or unreasonable": Statutory Construction Act, §52 (46 PS §552). But no such difficulties of interpretation arise if the meaning of the term "affected parties" is limited to the last employer or an employer who is shown to have an equivalent interest in the decision. In an investigation of the merits of the claim the identity of those who have such special interest is bound to be disclosed.

Coming directly to the point, who of all persons, natural or artificial, is more directly and vitally affected by an adjudication of the department, referee, or board than the last employer of the claimant? None has been suggested and we venture to say that none such can be found. It may be that there are others who are affected by the decision, but it is not necessary in this case to determine that question. Such problems can be best met when they arise. The administration of this law, as disclosed by public records, has involved the distribution of millions of dollars. The legislature in its wisdom granted a right of appeal. This would seem to be wise in view of the fact that otherwise a decision by the department or a referee or the board would be final and conclusive without opportunity for correction of errors, at least in the original proceeding. In our opinion it was the plain and evident purpose of the legislature to give to the last employer of the employee, or such other persons who may have a comparable and special interest in the decision in a particular claim, the right to appeal from a decision of the department, and to treat such persons as affected

parties. If such employer is an affected party and has a right of appeal from the decision of the department and intervenes by taking an appeal, it would necessarily follow that he would be a party aggrieved by the final decision of the board and consequently would have an appeal to this court.

The appellee cites that line of cases in which it has been held that one who seeks to question. the constitutionality of an Act of Congress or the legislature must show that he has sustained, or is immediately in danger of sustaining, some direct injury as a result of its enforcement and not merely that he suffers in some indefinite way in common with people generally *(Mass. v. Mellon,* 262 U. S. 447, 488, 43 S. Ct. 597; *Gentile v. Phila. & R. Ry.,* 274 Pa. 335, 340, 118 A. 223; *Knowle's Est.,* 295 Pa. 571, 145 A. 797). These cases are not pertinent for here the legislature recognized that there were other persons than the claimant who were affected by an award and such persons were given the right of appeal.

It is not necessary at this time to determine whether all employers who have contributed to the state fund have a right of appeal for we are here concerned alone with the last employer. We do hold that the last employer of the claimant, the Susquehanna Collieries Company, had a right of appeal, it appearing that the right to unemployment compensation depended on the circumstances under which such employment was terminated, and we hold that the term "affected parties" comprehends such persons as the appellant. It follows as a corollary that the appellant should have been given notice of the award by the department.

The appellant was entitled to have a decision by the board on the questions raised by its appeal. We express no opinion at this time on the merits of its contention.

The order of the board is reversed and the record is remitted to the board for further action not inconsistent with this opinion.