WINCHESTER REPEATING ARMS COMPANY, DIVISION OF
OLIN INDUSTRIES, INC. v. WILLIAM RADCLIFFE

SUPERIOR COURT      NEW HAVEN COUNTY      FILE NO. 69407

Memorandum filed May 15, 1947.

*Wiggin & Dana,* of New Haven, for the Appellant.

*James F. Rosen,* of New Haven, for the Appellee.

*William L. Hadden,* Attorney General and *Harry Silver-stone,* Assistant Attorney General for Unemployment Compensation Administrator.

ROBERTS, J.   This decision is upon respondent's motion, filed in the Superior Court on April 7, 1947, to dismiss the appeal of Winchester Repeating Arms Company.

The following are facts found from the record of the proceedings before the commissioners and the stipulation on file in this court, and a summary of the proceedings from the time of the examiner's decision to the filing of the stipulation in this court.

The respondent-claimant, William Radcliffe, was employed by the appellant, Winchester Repeating Arms Company, for a time prior to September 21, 1946.   The last day of employment of respondent-claimant by the appellant was on September 21, 1946.   On October 20, 1946, the respondent-claimant filed an additional claim for unemployment benefits, pursuant

to statute.  On November 26, 1946, the administrator, by Morris E. Tonpen, special review unit, a representative designated by the administrator and referred to as an examiner, approved the claim for unemployment benefits of the respondent-claimant for the period following October 20, 1946, on the ground that his unemployment on and after October 20, 1946, was due to a lockout not resulting from the demands of the employees..  On said November 26, 1946, the Winchester Repeating Arms Company was notified by letter of this decision, and said letter also contained the following: "This decision shall be final and benefits shall be paid accordingly on any subsequent compensable claims unless you shall within seven(7) days after the date of this notification, file an appeal with the Unemployment Compensation Department and apply for a hearing before an Unemployment Commmssioner."  On November 27, 1946, within seven days after the notification of said decision, Winchester Repeating Arms Company by D. K. Willers, assistant personnel superintendent, filed an appeal from the decision of the examiner and requested a hearing before the commissioner and among the claims that the award was illegal was one that the employee participated in a sit down strike.  Said appeal was received on December 2, 1946, by the appeals commissioner for the third congressional district.  The record as certified to this court by the commissioners on this appeal also contains a decision of the administrator dated December 6, 1946, relating to claims of employees of the appellant other than the named respondent-claimant, and also an appeal therefrom by the Winchester Repeating Arms Company to the commissioner.  On December 2, 1946, the respondent-claimant and the other claimants, by their attorney, made a motion to dismiss the appeals of the Winchester Repeating Arms Company.  Whereupon said motion to dismiss said appeals of the Winchester Repeating Arms Company came on for a hearing before commissioners Ernest B. Partridge, Carl A. Lundgren and Robert J. Stack, at which hearing testimony was presented and arguments made in behalf of the claimants and the Winchester Repeating Arms Company.  On February 17, 1947, the commissioners filed their decision, wherein the motion to dismiss said appeals was granted.  On February 28, 1947, the Winchester Repeating Arms Company, by its attorneys, filed a petition and appeal from the finding and decision of said unemployment compensation commissioners to this court with the appeals commissioner of the third congressional district, and said peti-

tion and appeal was filed in this court on March 3, 1947. On April, 7, 1947, the respondent-claimant, by his attorney, filed in this court a motion to dismiss said appeal, as on file.

Pursuant to motion, this court on April 11, 1947, entered an order wherein cases numbers 69366 to 69406 inclusive, and 69408 to 69409, are consolidated into the above entitled action number 69407, entitled *Winchester Repeating Arms Company* v. *William Radcliffe*, wherein the issues in all of said cases are to be heard and decided in and as case number 69407. On May 9, 1947, the parties in this action filed a stipulation, as on file, and among other provisions thereof, the appellant admits "that any award of benefits to these claimants for the period here in issue would not affect its merit rating account."

The question before this court narrows itself, under the above motion to dismiss the appeal, to the question whether or not the Winchester Repeating Arms Company has a right to appeal to this court under the statutes of Connecticut now in effect.

The determination of this question, even though it is conceded by the appellant that any award of benefits to these claimants for the period here in issue would not affect its merit rating account, requires a brief review of the statutes affecting this issue.

Section 1337e(c), Cum. Sup. 1939, reads in part as follows: "Compensable separations. As at the beginning of each compensable period of unemployment of an individual, a compensable separation shall be charged to the merit rating account of each employer who shall have employed the individual during at least four different calendar weeks in the fifty-six day period preceding the beginning of such compensable period, . . . " It will thus be seen that, from the above stated facts, the merit rating account of the Winchester Repeating Arms Company would not be affected in this case because of the fact that the employment of this claimant ended on September 21, 1946, and the compensable period commenced on October 27, 1946.

Section 967h, Sup. 1945, "Initial determination," appears to the court to be the most important statute in this case. It is to be noted in considering this statute that the language thereof was substituted for that of subsection (b) of § 1341e, which was repealed. Subsection (b) of § 1341e was the effective statute when the Unemployment Compensation Act was first adopted in Connecticut in 1936. At that time each employer had a "reserve" account against which the unemployment claims of

his employees were charged. The act was later changed, and § 703g was enacted whereby subsection (a) thereof provides for merit rating of each employer coming within its provisions.

Connecticut then changed from the so-called "reserve" to the so-called "merit rating," whereby a compensable separation was only charged to the merit rating account of such employer who had employed the employee within the period as provided in § 1337e(c), as quoted above, and any compensation not falling within said § 1337e(c) is chargeable to the so-called "pool account" to which all employers contribute.

Again referring to § 967h, it is found that after providing for the initial determination of the claim by the examiner, the following language appears: "He [examiner] shall promptly notify the claimant, and the employers against whose merit rating accounts compensable separations due to any benefits awarded by the decision might be charged, of the decision and the reasons therefor. Such decision shall be final and benefits shall be paid or denied in accordance therewith unless the claimant or any of such employers shall, . . . , file an appeal from such decision and apply for a hearing." It is to be noted that the language in § 1341e(b), before the change was made to its present form in 967h, read, "He shall promptly notify the claimant, and the employers against whose reserve accounts any benefits awarded by the decision might be charged, of the decision and the reasons therefor." And it further states " . . . unless the claimant or any such employers shall, . . . " It thus clearly appears that the legislature substituted in the present act the employers whose merit rating might be charged for those employers, under the previous act whose reserve accounts might be charged. It would therefore seem that the legislature clearly intended that only such employers whose merit rating, under the act now in effect, might be charged have the right to appeal, whereas, under the old act, only such employers whose reserve account might be charged had the right of appeal.

Counsel for the appellant urges a significant meaning to the word "might" in the term "might be charged," but the court feels that the word is used more in the sense of "will be charged." Furthermore, it is clear from the facts and stipulation in this case that the merit rating account of the appellant is not chargeable with the compensable separation in this case, and therefore the appellant did not have the right to a notice of the decision or right to appeal therefrom.

The examiner did in this instant case notify the appellant of his decision and further intimated in his letter that the appellant had a right of appeal therefrom. But, in spite of this, the court does not feel that the appellant was entitled to such notice or right to appeal.

In § 720f(c), Sup. 1941, which has to do with appeals to the commissioners, appears the language: "Due notice, by mail or otherwise, of the time and place of such hearing shall be given each interested party not less than five days prior to the date appointed therefor." It would appear to the court that an interested party before the commissioner would be limited to only those who had a right to the notice and appeal under § 967h, to wit, in this case, the claimant and the administrator, and not the appellant. The commissioners after hearing did dismiss the appellant's appeal.

Section 1341e, subsections (i) and (j), provides for appeal to courts and court review, and the latter subsection reads in part as follows: "At any time before the commissioner's decision shall have become final, any party aggrieved thereby, including the administrator, may appeal therefrom to the superior court for the county in which is located the employment bureau or branch in which the original claim was filed." The appellant filed such an appeal, and question here is whether it had such a right of appeal. The court does not believe that it has that right. The court does not believe that the legislature intended to open up the right of appeal to any other parties than those originally allowed to appeal under § 967h after the initial determination, which in the court's opinion did not include the appellant.

The appellant is not so directly financially affected by this award as to be aggrieved thereby. It is only affected in a remote way under this act, along with all other employers of the state, in its contributions to the so-called "pool," inasmuch as its merit rating is not affected. See *Massachusetts* v. *Mellon*, 262 U. S. 447, 487.

For the definition of an aggrieved party, one may look elsewhere to somewhat of an analogous situation in appeals from probate, wherein the statute, General Statutes, § 4990, provides, "Any person aggrieved . . . may appeal." The Supreme Court in *Averill* v. *Lewis*, 106 Conn. 582, 587, states, "We are constrained to hold that the right of appeal under General

Statutes § 5071 [now § 4990], is limited to those decrees upon the particular estate in which the appellants show a direct pecuniary interest." This is not the situation of the appellant in this case.

The appellant in its oral argument and brief cites cases from other jurisdictions, to wit, Pennsylvania, Michigan and Kentucky. The court fully agrees with the statement of the court in the case of *Susquehanna Collieries Co.* v. *Unemployment Compensation Board,* 137 Pa. Super. 110, one of the cases cited by the appellant, wherein the court says (p. 112): "The question presented is one of first impression in this state and we have been able to get little aid from the decisions in other jurisdictions owing to the different provisions contained in other unemployment statutes." Following this case further, it appears from the decision that the unemployment compensation law of Pennsylvania, § 501 (43 P. S. § 821) reads in part as follows: "The claimant and other affected parties shall be promptly notified of the decision and the reasons therefor." It thus appears that the other affected parties is a much broader term and is not as restrictive as the Connecticut statute § 967h. It is further significant that, from an examination of the Unemployment Compensaton Act in Pennsylvania, the fund from which the unemployment payments are made is a common fund supplied by assessments on all employers alike, together with a certain amount of contributions by the federal government and, unlike Connecticut, does not have a merit rating provision which affects each employer according to such employer's particular experience.

In *Chrysler Corporation* v. *Smith,* 297 Mich. 438, 453, the court said: "Claimants question the right of the Chrysler Corporation to appear and contest their right to awards. This requires but short answer. As a contributor to the fund, having an interest in its proper disbursement, it was the right of the corporation, if not its duty, to see that the purpose and full integrity of the fund was preserved." This case seems quite compelling and was indeed followed by the commissioners in the case of *General Motors Corporation* v. *Mulquin,* Conn. U. C., Third Congressional District, October 1, 1946. But here again an examination of the Michigan Unemployment Compensation Act and rules and regulations thereunder shows that the future rates for each employer are based upon such employer's experience. Mich. Comp. Laws 1929, Sup. 1945, Chap.

150 A § 8485-57, sec. 17 and § 8485-61a, sec. 21a. Section 8485-72, sec. 32, provides in part: "The claimant and other interested parties shall be promptly notified of such determination and the reasons therefor. If within 15 days after such notification the determination under these regulations is disputed, the claimant or any other interested party may either . . . " Under rule 1, it is provided in part, in regard to filing an appeal to the referee: ". . . may be taken by a claimant, an employing unit, or any other interested person." Thus, here again it appears to the court that the terms of the Michigan act and rules and regulations are much broader and the rights to appeal are not limited to such particular parties as is the case in Connecticut. It is further significant that the rates paid by the employer are more directly affected by the unemployment awards than under the Connecticut act, outside of the merit rating.

The appellant also cites a Kentucky unemployment compensation commission decision by the referee. U. C. I. S. Benefit Series, A. D.-22, May 19, 1939, p. 1973. Here again, the statute is apparently different and has a reserve account for each employer against which reserve account benefits may be charged, and it also contains the broad expression that: "the claimant, or any party to the determination" may file an appeal.

The court recognizes the fact that from the record in this case the dispute may involve the question whether a lockout existed, as determined by the examiner, or a strike, as claimed by the appellant, and although it might appear that the appellant would be able to furnish valuable information in that respect and be much interested therein, yet it does not appear to the court that the legisature in its wisdom has seen fit to grant it the right of appeal. "Regulations may result to some extent, practically in the taking of property, or the restricting its uses, and yet not be deemed confiscatory or unreasonable. Courts will not substitute their judgment for the legislative judgment when these considerations are fairly debatable." *State* v. *Hillman,* 110 Conn. 92,105; *Lyman* v. *Adorno,* 133 Conn. 511.

The appellant, in one of its reasons of appeal, stresses the point that "the denial of appellant's right to appeal from such erroneous and unlawful award, deprives appellant of its property without due process of law, in contravention of the Constitutions of the State of Connecticut and of the United States."

Here again it would appear that the court should not interfere with the apparent intent of the legislature in denying this appellant an appeal. "The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting them and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. We are not now speaking of the merely ministerial duties of officials." *Massachusetts* v. *Mellon,* supra, 488.

"Courts will not hold laws, ordinances or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive or confiscatory." *State* v. *Hillman,* supra, 106.

The court therefore finds: (1) Said appellant's merit rating account cannot be charged with any compensable separation in this case, (2) Said appellant is not such an employer as is entitled to an appeal, (3) Said appellant is not a party aggrieved by the decision of the commissioner so as to entitle it to an appeal to this court (4) The denial of the appellant's right to appeal is not in contravention of the constitution of the state of Connecticut or of the United States.

The motion to dismiss the appeal of the Winchester Repeating Arms Company is granted, and the appeal is dismissed.