Kistler, Appellant, *v.* Swarthmore Borough.

288

Argued November 21, 1938. ▮

▮ Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ. ▮

*Robert W. Beatty*, with him *George T. Butler*, for appellant.

*Clarence G. Myers*, with him *Harold L. Ervin* and *Duane, Morris & Heckscher*, for appellee.

OPINION BY BALDRIGE, J., January 31, 1939:

The validity of a borough ordinance is involved in this appeal.

The appellant, a resident of the borough of Swarthmore, filed a complaint under section 1010 of the General Borough Act of May 4, 1927, P. L. 519, art. X, as amended by the Act of May 18, 1933, P. L. 818, §1 (53 PS §12900), which provides that a complaint may be made to the court of quarter sessions by any person aggrieved, attacking the validity of an ordinance, within thirty days after the ordinance takes effect.

The ordinance assailed is No. 408, which became effective March 5, 1938, entitled "An ordinance to promote the public health, safety, morals, and general welfare of the Borough of Swarthmore," etc. Section 1 provides: "Hereafter it shall be unlawful for any person, firm or corporation to conduct, operate or maintain, anywhere in the Borough of Swarthmore, any theatre, motion picture house ...... or other place of amusement, display or entertainment, or commence the construction or opening of such place of amusement, at which an admission or other fee is charged, or to which the public generally is invited for commercial purposes."

The complainant is the owner of a certain tract of unimproved land in the borough of Swarthmore, bounded on the west by "Borough Hall," on the east by the Methodist Episcopal Church, on the north by Lafayette Avenue, 22 feet between curbs, and on the south by Park Avenue, 28 feet between curbs. He averred that this property is in close proximity to the center of the business district of the borough and is particularly adaptable for business and commercial purposes; that he has received an offer for this land if it can be used for a moving picture theatre without violating the existing borough ordinance; and that he is aggrieved as the ordinance, particularly in respect to its application to his property, is unreasonable, confisca-

tory, unconstitutional, and beyond the powers of the borough to enact.

The borough filed a responsive answer, in which it denied, inter alia, that this land is contiguous to the business section of the borough, and alleged that on the opposite sides of Lafayette and Park Avenues, on which it abuts, is residential property. Under "New Matter" it set forth that the complainant acquired the property in 1926 and 1927, and in 1928 there was approved a zoning ordinance, wherein it was placed in the apartment house district. In 1929, pursuant to repeated requests of the petitioner, the zoning ordinance was amended so as to include his land in the business district, where it has remained to the present time, unimproved.

In section 302 of the zoning ordinance aforesaid, as amended, reference is made to the various uses of property permitted in the business district, and among them is "Athletic, recreational use." Those words are defined in section 100 (15) to include public or private play grounds, tennis courts, etc., but "it shall exclude places of public amusement such as amusement parks . . . . . . moving picture houses . . . . . . or any similar establishment or place or device of amusement operated or conducted for profit or commercial gain."

Although the petitioner's land has been subject to the provisions of that ordinance for approximately 9 years, no complaint was made by him until December 27, 1937, when he filed with the Secretary of the Board of Adjustment, operating under the zoning ordinance, a request for a special exception to permit the erection of a moving picture house on his lot. Before a hearing had been scheduled, petitioner's counsel appeared before the borough council and requested that the zoning ordinance be amended to permit petitioner's premises to be used or occupied as a moving picture theatre. Thereupon, council for the borough advertised a public hearing, which was held on January 5, 1938, in the auditorium

of the high school. Opportunity was given to those present to express their views, after which a vote was taken. The count showed that 30 voted for the amendment and 600 voted against it. Petitions bearing the signatures of 933 residents had also been filed with the borough secretary, opposing the establishment of a moving picture house in the borough of Swarthmore, and the officers of Swarthmore College, located in the borough and attended by 600 students, registered their protest, on the ground that it would be against the best interests of the college and its students. With this overwhelming opposition from the residents and taxpayers, the borough authorities refused to amend the zoning ordinance and passed this ordinance in the exercise of the general police power of the borough, and, more particularly, under section 1202 of the General Borough Act, supra, art. XII, as amended June 9, 1931, P. L. 386, §13 (53 PS §13338), which reads as follows: *"Specific Powers* — "The powers of the borough shall be vested in the corporate officers. They shall have power: ...... XXVI. *Licensing Amusements* — To regulate, license, or prohibit theatrical exhibitions, amusements, dances, at which an admission or other fee is charged and other exhibitions ......"

The respondent, under "New Matter" in its answer, asserts also that Swarthmore is essentially a residential community and college town of approximately 5,000 persons, including 800 students and faculty of the Mary Lyon School and Swarthmore College; that the establishment of a moving picture theatre will inevitably attract both automobile and pedestrian traffic in that immediate neighborhood, thus increasing the congestion of the borough streets, particularly at night; that due to the narrowness of the streets there is now great danger to both pedestrians and those operating vehicles; that there exists in this portion of the borough a fire hazard due to the likelihood of the fire apparatus, which is housed in the Borough Hall, being obstructed or

hampered by vehicular traffic in this immediate locality; that both these hazards would be greater if a moving picture theatre were permitted on the petitioner's land.

It is averred, finally, that the public health, safety, morals, and general welfare of the borough would be adversely affected thereby. Increased police protection would be required during the operating hours of the theatre, and the services of the borough's present small police force would be required to direct traffic of automobiles attracted by the theatre, so that less protection would be available for the remainder of the borough.

No answer having been filed to the new matter, it is proper to assume that the averments are true. The case was heard on the complaint and answer by the court below, sitting in banc. Judge McDADE filed an opinion and order, dismissing the complaint and declaring the ordinance effective and valid.

While the appellant concedes that a borough has broad authority under its general police power, he contends that well-defined limitations are imposed so that an ordinance thereunder must have a reasonable relation to public health, safety, morals, and general welfare; that it cannot be accurately asserted that all moving picture theatres, no matter how properly conducted, have necessarily harmful tendencies. Courts should hesitate in declaring invalid the express will of the people of a municipality. There is much to be said in permitting residents to determine rules and regulations relating to their local affairs. "It is democratic that each city or community should, so far as practicable, determine its own standard of quietude and other conditions under the police power. This may vary in different communities": *Magnolia Petroleum Co. v. Wright et al.*, (Okla.) 254 Pac. 41, 44. In *Wartman et al. v. City of Phila. et al.*, 33 Pa. 202, 209, where the question of the inherent power of a municipality over its public markets was involved, it was said "that every community, whether large or small, should be permitted

to control, in their own way, all those things which concern nobody but themselves."

In applying the legal tests to this ordinance to determine its validity, it should be construed, if possible, with reference to local conditions existing in this comparatively small, residential and college town, where there are no industries, and but few stores largely concentrated in the center of the town: *Euclid v. Ambler Realty Co.* (Ohio), 272 U. S. 365. It is not difficult to conclude that there is a pronounced sentiment in Swarthmore in opposition to having in their midst the type of entertainment a moving picture house furnishes.

The petitioner, under the uniform rules, has the burden of establishing that the ordinance is unreasonable and confiscatory as to him, not to others, as he is the only party complaining. "The uniform rule is that persons seeking to avoid the effect of an ordinance because it is unreasonable must show that it is unreasonable as to them, and cannot predicate their claims upon the fact that the ordinance may be unreasonable as to others": *Marblehead Land Co. et al. v. City of Los Angeles* (9 CCA), 47 Fed. (2d) 528, 533. We must, therefore, determine the effect of this ordinance on the petitioner's property, to ascertain whether he is legally aggrieved: *Reeves v. Phila. Suburban Water Co.,* 288 Pa. 418, 420, 136 A. 526: *Commonwealth v. Loftus,* 292 Pa. 395, 397, 141 A. 289; *Knowles' Est.,* 295 Pa. 571, 587, 145 A. 797.

The appellee asserts that the petitioner has not shown that he is harmed, as his complaint alleges as follows:

"6. The said piece of land owned by Complainant as aforesaid is readily saleable for business and commercial purposes, including inter alia, that of a moving picture theatre, and its value and adaptability for such purposes greatly exceeds its value and adaptability for residential purposes." He does not say that a greater or higher price can be obtained if sold for a moving picture theatre

than for other business purposes for which it may be legally used.

The zoning ordinance is a further barrier to the construction of a moving picture house, although we readily concede that its invalidity or repeal is not a prerequisite to this proceeding. It may be well to note, however, that the zoning act of June 29, 1923, P. L. 957, §1 (53 PS §15731) provides: "For the purpose of promoting health, safety, morals, or the general welfare of boroughs and townships of the first class, councils of boroughs ...... are hereby empowered to regulate and restrict ...... the location and use of buildings, structures, and land for trade, industry, residence or other purposes ......." Such zoning ordinances have been recognized as valid by the appellant as he proceeded thereunder to have his property changed from the residential to the business district.

The right to establish zones within which certain types of buildings or businesses may be conducted cannot be questioned. It received the sanction of the United States Supreme Court in *Nebbia v. State of New York,* 291 U. S. 502. See also, *Euclid v. Ambler Realty Co.,* supra. This commonwealth has specifically authorized its political subdivisions to impose certain limitations respecting buildings used for amusement purposes to which an admission or fee is charged. It is a matter of common knowledge that many municipalities have passed zoning ordinances prohibiting, within certain districts, industries, commercial enterprises, undertaking establishments, and other businesses which are conducted without noise, dust, or vibration. That is so in other jurisdictions. See, also, *Murphy v. People of State of Calif.,* 225 U. S. 623; *Weaver v. Stone* (Fla.), 11 Fed. Supp. 559; *Magnolia Petroleum Co. v. Wright,* supra.

We are of the opinion that this record does not show definitely that the petitioner has been aggrieved.

We will pass on to consider the appellant's next posi-

tion, viz., that the ordinance in question cannot be sustained under section 1202, clause XXVI, of the General Borough Act, supra (53 PS §13338), as the word "prohibit" does not necessarily authorize a municipality to forbid all theatrical exhibitions or amusements, but only those which are evil or harmful, and does not contemplate a moving picture or a performance which does not affect the morals of the people and the general welfare of the municipality. In support of this position, it cites *Manorville Boro. v. Flenner*, 286 Pa. 103, 133 A. 30. There, the borough passed an ordinance prohibiting the storage of more than 400 gallons of gasoline within the borough limits. The reasonableness of the ordinance was attacked, and the court held that as the business was legitimate, useful, and subject to all reasonable regulation, it did not give the municipality arbitrary power to prohibit an activity which was in itself not harmful. The court said (pp. 106, 107) : " . . . . . . but, as the power conferred by the Borough Code is a general one, it can be exercised only in a reasonable manner . . . . . . It was conclusively shown that not the amount of gasoline stored, but the manner of its storage, determines the question of danger therefrom and that as here stored in modern, scientifically constructed tanks it is not dangerous." In that case, as in *Bryan v. City of Chester*, 212 Pa. 259, 61 A. 894, also relied upon by appellant, the municipality was acting under a general, not a specific, power as given in section 1202 of the General Borough Act, supra.

Compare *Euclid v. Ambler Realty Co.*, supra, where the court held that the ordinance was valid, even though the exclusion was in general terms of all industrial establishments and it could thereby happen that not only offensive and dangerous industries would be excluded, but those that were neither offensive nor harmful would share the same fate.

In *Ligonier Valley R. R. Co. v. Latrobe Boro.*, 216 Pa. 221, 224, 65 A. 548, the court cited with approval the

following statement in 1 Dillon's Municipal Corporations, §328: "It is settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specific and defined character, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done, cannot be set aside by the courts because they deem it to be unreasonable or against sound policy."

In *Mahanoy City Boro. v. Hersker*, 40 Pa. Superior Ct. 50, 54, we pointed out that there is a greater distinction between power expressly granted and power merely incidental to the general authority of the corporation, and cited with approval Cooley on Taxation, pp. 410, 411, as follows: "...... public amusements may also be forbidden with entire propriety except when licensed, inasmuch as everything of that nature has some tendency to disorder and to increased necessity for police supervision." We said, also, that the authority of a municipality to license or permit amusements, exhibitions, etc., is greater than over trades and occupations, or matters of that character. "The borough of Mahanoy City was thus expressly clothed with power to regulate, license or prohibit theatrical exhibitions, and in the exercise of that power passed the ordinances in question. The exercise of police power directly by the legislature and by municipalities under legislative authority stands on the same ground and is subject to the same conditions [citing cases]. The borough had authority to regulate, restrain and prohibit the business with which this ordinance dealt ...... The grant to the various boroughs of the commonwealth of power to enact ordinances relating to theatrical performances is in its terms broad as it can be made. They have not only the power to regulate but to license or prohibit.

The exercise of this power involves matters not involved in the mere police inspection of the plays during the period they are in progress." (pp. 55, 56.)

We do not coincide with the view that the legislature did not have the authority to confer the power that has been exercised by the borough in the enactment of this ordinance. On the contrary, we are of the opinion that, under proofs of the conditions that prevail and from the admitted facts, this ordinance is not unreasonable or confiscatory in its operation, but is valid and binding on the appellant.

The order of the court below is affirmed, at appellant's costs.