Commonwealth* *v.* Christopher, Appellant.

---

\* The caption of this case should be Township of Harborcreek v. Raymond Christopher, doing business as Christopher Auto Parts, Appellant, as the Commonwealth of Pennsylvania is not a party to the same.

Argued April 9, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*T. P. Dunn,* with him *Jackson D. Magenau* and *Joseph C. Barber,* for appellant.

*Barney Bernard,* for appellee.

OPINION BY GUNTHER, J., June 11, 1957:

Raymond Christopher has filed this appeal from the dismissal of his appeal by the court below from a summary conviction for violation of a township ordinance. The matter was disposed of by the court below under an agreed case stated.

Harborcreek Township, Erie County, is a township of the second class, consisting of 34 square miles, with a population of 7475 persons as of the 1950 census, and is mostly rural in character. There are no heavy or light industries within the township limits. For many years prior to March 16, 1956, defendant was engaged in the business of taking used motor vehicles, keeping them on his premises, selling such parts as he could and finally selling the remainder for scrap. Defendant has conducted his business on his own premises on Route 955, commonly known as Iroquois Avenue in said township. His lot is bounded by the highway on the north and on the south by the General Electric test tract for locomotives. The junked cars and parts are more than 35 feet distant from the residences on either side because the intervening land is swamp and marshland.

On March 16, 1956, the supervisors of the Township of Harborcreek passed an ordinance allegedly prohibiting nuisances, including but not limited to the dumping, storage or accumulation of junk on public or private property; the storage or accumulation of abandoned or junked automobiles, etc., which provided, inter alia, as follows: "Section 2. It shall be unlawful for any person to dump, store, accumulate or cause or allow to be dumped, stored or accumulated any junk on any land, public or private, to store or cause or allow to be stored junked automobiles on public or private property or to carry on any offensive manufacture or business or allow or cause to be allowed the existence of any dangerous structure or excavation within the limits of the Township of Harborcreek. Section 3. In the event any person shall violate any of the provisions of this Ordinance, the Supervisors of Harborcreek Township shall order the removal of any such nuisances or dangerous structures from public or private ground after fifteen (15) days written notice to the owners or

occupants of the premises to do so and, upon default of the owners or occupants of the premises to abate such nuisances, the Supervisors of Harborcreek Township shall abate or remove the same and collect the costs of such removal together with the penalty of $10.00 from the owners or occupants. Section 4. Any person violating the terms of this Ordinance shall be subject to a fine of not less than $5.00 nor more than $100.00, and in default of payment thereof shall be committed to the Erie County Jail, for a period of not more than thirty (30) days for each separate offense, with the right of appeal as in other cases of summary conviction."

Authority for such ordinance is found in The Second Class Township Code, the Act of 1947, July 10, P.L. 1481, as amended, Article VII, section 702 XII, 53 P.S. section 19093—702, subsection XII, which provides as follows:

"XII. Nuisances. To prohibit nuisances, including but not limited to, accumulations of garbage and rubbish, and the storage of abandoned or junked automobiles, on private and public property, and the carrying on of any offensive manufacture or business; and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so, and, in his default, to collect the cost of such removal, together with a penalty of ten dollars from the owner by summary proceedings. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity."

Appellant, on October 22, 1956, was arrested for violating section two of the ordinance cited above and was fined one hundred dollars after hearing. From this fine, he took an appeal to the Court of Quarter Sessions of the Peace of Erie County, and, upon a case stated, his appeal was subsequently dismissed. Both in the

court below and here, appellant questions both the validity and reasonableness of the ordinance as exceeding the authority given the township under The Second Class Township Code, supra, and as being violative of his constitutional rights under Article I, section 1 of our Constitution and of the Fourteenth Amendment to the United States Constitution.

The ordinance as enacted nowhere defined what was declared to be a nuisance [1] or referred to the storing or accumulation of abandoned or junked automobiles on public or private property as a public nuisance. It merely declared as unlawful the storing of junked automobiles, for which a penalty was imposed. What the ordinance prohibited was the continuation of a business in existence prior to the enactment. The legislature gave power to the township to "prohibit nuisances" including the storage of abandoned or junked automobiles. It did not define the storage of such automobiles as a nuisance per se, but, rather, gave authority to local municipalities, based upon actual conditions, to so declare such activities. The ordinance in question did not do this but prohibited or made unlawful that which was lawful prior to the enactment.

Briefly stated, the question here involved is whether one operating an automobile storage of junked vehicles or operating a junk yard may be prohibited from continuing his operation and, by continuing such operation, be fined for continuing his business. The fundamental right to earn a livelihood in pursuit of some lawful occupation is protected under our respective constitutions and cannot be taken away by arbitrary or capricious legislation. The business of operating a

---

[1] The title of the ordinance reads: "An ordinance prohibiting nuisances, including but not limited to the dumping, storage or accumulation of junk on public or private property . . ."

junk yard is a legitimate enterprise which, while offending the aesthetic taste, does not constitute a dangerous business or one known to be inherently injurious or harmful to the public. By itself, it does not adversely affect the public peace or safety, nor can it be designated as a fire or health hazard. While the regulation of such enterprises is legitimately within the scope of the police power, due regard must be had to the constitutional safeguards which demand that such regulations shall not be unreasonable, arbitrary or capricious and that the means adopted shall have real and substantial relation to the object to be attained. Thus, for example, the use of real estate must not create a nuisance which affects the health, safety or morals of the community. *Menger v. Pass*, 367 Pa. 432, 80 A. 2d 702.

While the legislature may, within reasonable limits, prescribe certain types of endeavors as nuisances (cf. *Heinl et al. v. Pecher et al.*, 330 Pa. 232, 198 A. 797) the final determination of the legal question is for the courts. *Commonwealth ex rel. Woodside v. Sun Ray Drug Company*, 383 Pa. 1, 116 A. 2d 833. The legislature in the instant case, however, did not declare the activity of engaging in the storage of junked automobiles as a nuisance. As a matter of fact, under The First Class Township Code, the Act of 1949, May 27, P. L. 1955, 53 PS §19092-1502, subsection 43, it gave townships the right to regulate and license junk dealers and salvage yards used for the collection, storage and disposal of used and second-hand goods and materials. Had the legislature declared such activity as a nuisance, it would not have granted authority to first class townships, for example, to regulate such activity. Nuisances are not regulated but abated. What is not an infringement upon public safety and is not a nuisance, cannot be made one by legislative fiat and then prohibited.

*Manorville Borough v. Flenner,* 286 Pa. 103, 133 A. 30. While a certain activity might be deemed undesirable in one section or area of a municipality, it may not be considered such in another. Hence, municipalities were granted the right to zone the various sections or areas to separate business and industrial areas from residential areas. Here, however, the attempt is not to zone or limit but to prohibit, and this prohibition applies throughout the entire area of the township. It is conceded by appellee that the regulation of automobile junk dealers is not here in issue. What the legislature intended to grant to second class townships was the power to prohibit nuisances or offensive businesses, expressly to be declared as such in an ordinance, and not the power to abolish a lawful business conducted in such manner as to amount to a nuisance. This conclusion seems fairly apparent from the last sentence of the Act, supra, where it is stated that "In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity." The powers "herein conferred" refers to the power to prohibit nuisances, the carrying on of any offensive manufacture or business and the removal of a nuisance or dangerous structure.

We know of no decision in this Commonwealth expressly declaring the business of dealing in or storage of junked automobiles as adversely affecting the public health, safety or morals. As stated by our Supreme Court in *Molony v. Pounds,* 361 Pa. 498, 64 A. 2d 802, " 'In these cases equity cannot act with too much caution. Its strong arm must not be allowed to fall with destructive effect upon a lawful and necessary business, unless it is plainly manifest and certain beyond doubt that the pursuit of the trade would result in substantial injury.' " Automobile scrap yards or junk yards constitute a source scrap metal for other industries and a constant source of automobile parts which might otherwise

be unobtainable. The importance of such scrap metal during the last war, as vitally affecting national defense and the ability to continue producing implements of defense was forcefully demonstrated. We cannot say that the time will not arise again when the need for such scrap metal will again become a vital necessity.

The ordinance is sought to be sustained, inter alia, on the ground that these types of junk yards emit loud noises, threatening flames, clouds of smoke, noxious vapors and bad smells, and are hideouts for vermin. However, if such arguments, if true, were valid reasons for the abolition of automobile junk yards, the same reasoning could equally be applied, for example, to eliminate steel manufacturing and processing mills and other similarly legitimate industries. And the mere enactment of such an ordinance could wipe out and punish for the continuation of such legitimate enterprises.

Appellee relies upon the following cases: *Kistler v. Borough of Swarthmore,* 134 Pa. Superior Ct. 287, 4 A. 2d 244; *Commonwealth v. Baker,* 160 Pa. Superior Ct. 640, 53 A. 2d 829; *Falls Township v. Wisniewski,* 89 D. & C. 540; *Township of Neshannock v. Bradley,* 52 D. & C. 136, and *Whitpain v. Douglas,* 63 D. & C. 566. We have examined all these cases and find them distinguishable from the instant case. In *Kistler v. Borough of Swarthmore,* supra, the question arose whether a borough can forbid the construction of a motion picture house. In that case, the ordinance was passed, without challenge, some years prior to the attempt to build a motion picture house and no attempt was made to legislate out of existence any established motion picture house. In *Commonwealth v. Baker,* supra, the validity or reasonableness of the ordinance was not questioned, and we merely held that in prosecution under an ordinance prohibiting the maintenance of a junk yard, the

prosecution was not required, as a prerequisite, to show that the junk yard was a nuisance in fact or per se. Furthermore, the ordinance expressly declared such activity to be a nuisance. The other cases cited show that in each instance the lower court was dealing with nuisances in fact. In all of these cases, the township supervisors proceeded in equity to abate a nuisance in which the defendant had a right to defend himself against the charge.

We have also examined the case of *Canton Township v. Bedillion*, 7 D. & C. 2d 716, not cited by either side, in which the learned chancellor sustained a township ordinance practically identical with that of the instant case. While we have a high regard for the learned chancellor in that case, we cannot adopt his reasoning, particularly on the constitutional determination therein stated. However, concluding, as we do, that the ordinance in the instant case, as drawn, is unenforceable, we need not consider the constitutional questions raised as to the power of the legislature and of a second class township to prohibit certain occupations.

The judgment and order of the court below is reversed at appellee's costs.

WRIGHT, J., would affirm upon the opinion of President Judge EVANS for the court below.