**Vargo v. Herstine**

*Wilbur H. Van Dine* and *Dean L. Foote*, for plaintiffs.

*Vanartsdalen & Pratt*, for defendants.

SATTERTHWAITE, J., December 18, 1959.—This is an action in equity to invalidate and enjoin enforcement of an ordinance of a second class township which declares automobile "drag-strip" racing and certain collateral incidents thereof to be a nuisance and unlawful. Plaintiffs are the individual owners of land within the township upon which a "drag-strip" is in the process of construction, and also the unincorporated association which has leased the same from the owners and which proposes to conduct the actual "drag-strip" races thereon. The township and the respective supervisors thereof individually are the only defendants.

Upon the filing of plaintiffs' complaint, an injunction was issued ex parte, but the same was dissolved six days later after hearing. Defendants' preliminary objections attacking, inter alia, equitable jurisdiction, were overruled without prejudice to reconsideration upon the more complete development of the facts after trial. Defendants thereupon filed an answer with new matter, and plaintiffs replied to the latter. The physical and objective facts alleged in the respective pleadings are not substantially in dispute, and the real issues in the case go to matters of future intentions, the argued consequences thereof as to each side and the propriety of the conclusions of law respectively alleged to flow therefrom. . . .

### Discussion

Section 702 of the Second Class Township Code of May 1, 1933, P. L. 103, enumerates the various cor-

porate powers of municipalities of that class and provides that they be exercised by the supervisors. Clause XII thereof, 53 PS §65712, as last amended by the Act of May 20, 1957, P. L. 174, sec. 5, provides as follows:

"To prohibit *nuisances, including but not limited to,* accumulations of garbage and rubbish, and the storage of abandoned or junked automobiles, on private and public property, and the carrying on of any offensive manufacture or business; and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so, and, in his default, to collect the cost of such removal, together with such penalty as may be prescribed by ordinance from the owner by summary proceedings. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity." (Italics supplied.)

Prior to the revision of the code by the Act of July 10, 1947, P. L. 1481, the express power to prohibit certain activities under this clause was limited and confined by the legislature to the three categories specified: Accumulations of garbage and rubbish, storage of abandoned or junked automobiles and the carrying on of offensive manufacture or business. Under such former language, second class townships did not have power legislatively to prohibit nuisances in general beyond those expressly mentioned. The 1947 amendment, however, was apparently intended to broaden the scope of the power conferred upon such municipalities; it added the language emphasized above, and the clause now expressly authorizes the prohibition of *any* types of nuisances, whether or not they be included within the express categories.

A number of lower courts have passed upon the validity of ordinances enacted under this clause as related to the storage of abandoned or junked auto-

mobiles. See, e.g., Township of Neshannock v. Bradley, 52 D. & C. 136; Whitpain v. Douglass, 63 D. & C. 566; Falls Township v. Wisniewski, 89 D. & C. 540; Canton Township v. Bedillion, 7 D. & C. 2d 716. In Borough of Dallastown v. Chanceford Township, 68 York 5, similar considerations were discussed in connection with an ordinance outlawing garbage dumps. All of these cases held, or the language of the various opinions at least indicated, that second class townships were empowered under the above quoted statutory language to advance upon recognized nuisance concepts by legislatively declaring auto graveyards or garbage dumps to be nuisances and prohibiting them in advance, absolutely and irrespective of their status as nuisances in fact. Doubt as to the present authority of these decisions for the latter proposition arises from certain language of the later opinion of the Superior Court in Commonwealth v. Christopher, 184 Pa. Superior Ct. 205, although the exact problem was not therein involved since the court actually held merely that a township ordinance prohibiting automobile graveyards was ineffective since it had not expressly declared the same to be a nuisance; in this connection, see also Richland Township v. Breiner, 8 Bucks 107.

But whether or not the legislature did, or constitutionally might, authorize second class townships to declare the subjects expressly enumerated in clause XII to be nuisances even though they would not be nuisances at common law, is of no controlling moment either way insofar as the present case is concerned. The instant controversy does not reach that problem. The ordinance here under consideration must stand or fall on the determination of whether or not the activity interdicted, "drag-strip" racing and the collateral incidents thereof, may properly be characterized by conventional judicial standards as a nuisance,

either per se or in fact. Second class townships, especially, have no inherent police powers, and they exercise only such prerogatives in that connection as are expressly or by necessary implication conferred by the legislature: In re Falls Township Trailer Ordinance, 84 D. & C. 199, 202-203, and the authorities therein cited; Commonwealth v. Barnhardt, 12 D. & C. 2d 255, 258-259. Unlike automobile graveyards and garbage or rubbish dumps, "drag" racing is not a specifically expressed subject of local prohibition by particular authorization of the legislature, and hence such activity may be outlawed by the supervisors only if actually within the common, ordinary and legally accepted concept of a "nuisance", that being the controlling and only presently relevant and applicable term in the enabling statute.

The chancellor assumes that no real question could be raised against the proposition that the Commonwealth, as sovereign, might prohibit nuisances under its inherent police power, and further that no real problem arises from the Commonwealth's delegation of its authority to deal therewith to various classes of municipal subdivisions, at least so long as it concurrently maintains the traditional control of the same through its judicial branch. Even the Christopher case, supra, would seem to recognize that if the township ordinance expressly does declare storage of abandoned or junked automobiles, for example, to be a nuisance, and if such activity in the particular situation before the court in fact does amount to a common law nuisance, the impact of the ordinance thereon would not be an unconstitutional violation of private rights, since the latter must necessarily yield to a proper exercise of the police power.

So, too, in the instant case, the various matters specified in the ordinance are expressly stated therein to be nuisances, and the ultimate problem, therefore, is the determination of whether or not in actual rela-

tion to the particular situation allegedly outlawed thereby, such matters do constitute nuisances in fact. This problem, however, cannot be resolved in a vacuum, and the chancellor does not believe that the present record permits an over-all and definite disposition of the question one way or the other. Accordingly, and passing without deciding defendants' objection that equity has no jurisdiction in this case, the chancellor believes that plaintiffs have not borne the burden of persuasion by the weight and preponderance of the evidence that they are entitled to the extraordinary remedy of injunctive relief against anticipated future attempts to enforce the ordinance in question.

It may well turn out that the actual operation of the "drag-strip" will not involve any nuisance in fact, and that therefore the ordinance would be invalid as to plaintiffs. On the other hand, in the language of subparagraph (*a*) of section 1 of the ordinance, the ". . . operating . . . [of] . . . real estate within our said Township for conducting of automobile races . . ." may quite conceivably amount to a nuisance in fact upon actual experience, after weighing many presently unascertained circumstances, such as the amount of noise from unmuffled engines, braking tires, loudspeakers, cheering of spectators, or the very size and possible disorderliness of crowds, or unwarranted and undirected traffic congestion on neighboring highways and countless other possible consequences, the existence or effect of which cannot be determined unless and until such operation actually occurs.

The fact that the "drag-strip" is located in a rural neighborhood does not permit it to be said presently as a matter of law that the operation thereof cannot possibly be a nuisance in fact, even if it be conceded that it could not be declared to be a nuisance per se. Shenk v. Sherrard, 52 Lanc. 297, relied upon by plain-

tiffs in this connection, does not so decide. While the Lancaster County Court refused to enjoin the operation of a race track under all the circumstances there appearing, including the remoteness thereof from premises of the complainant, nevertheless, as pointed out by Judge Davis in Salem Reformed Church v. Riboldi, 14 Monroe 85, 91, where injunctive relief was granted against a race track in a rural area which happened to be closely adjacent to churches and a village:

". . . even in a rural neighborhood the construction or operation of the same might be such as would cause damage to the lands of another or interfere with the reasonable enjoyment thereof, thereby constituting a nuisance, which could be enjoined unless the objectionable condition were corrected." See also the adjudication of Judge Johnstone in Kohr v. Weber (C. P. of Lancaster County in Equity, Equity Dk. no. 11, pg. 330, handed down November 13, 1959, a copy of which was furnished the undersigned by Judge Johnstone although the same is not yet reported), in which the Lancaster County Court found a "drag-strip" operation similar to that proposed by plaintiffs, even though located in an agricultural area, to be a nuisance in fact and subject to abatement by injunction.

Similar observations may be made with respect to other phases of the ordinance. Some of these involve factual situations which conceivably either could or could not result in nuisances in fact, depending upon actual events; others are concerned with minor and petty incidental matters which may well be beyond the scope of the township's legal authority to regard as nuisances but as to which there is not the slightest intimation that the township intends to institute a prosecution in any event. By way of illustration in the latter connection, plaintiffs are probably correct in their contention that the mere construction of the "drag-strip", although literally a violation of the ordi-

nance, did not in fact involve any nuisance considerations *as actually accomplished and determined after the event,* and hence that such subject was actually beyond the power of the supervisors to prohibit. But such determination is presently of only academic interest.

The chancellor determines that in any view of the situation plaintiffs have failed to demonstrate that injunctive relief should be granted; either various portions of the ordinance are potentially valid against them under particular circumstances, the possibility of which has not been foreclosed by the present inconclusive situation, or there is in fact no real threat of adverse proceedings against them under those parts of the enactment which can presently be said to be patently invalid. Although it is obvious that plaintiffs desire an advance ruling on the propriety of their proposed activities as a guarantee against future interference with the same, it should be equally obvious that no judicial carte blanche of that character can or should presently be made, a conclusion especially emphasized by reason of plaintiffs' guarded or at least undisclosed plans as to the particular times when their events are to be run. This court is not inclined to give advisory opinions on hypothetical facts which may or may not ever come about or which may only partially depict the whole of the future situation. The chancellor could no more properly hold that there is no possibility of a nuisance arising out of plaintiffs' rather indefinite proposals, than he could rule that the same must necessarily and inevitably amount to a nuisance. Neither conclusion is a matter of demonstrative proof on the present record.

Moreover, the last substantial vestige of urgency or colorable appeal to the equitable discretion of the court has now been removed from the case, so far as the record discloses, by the practically completed state

of the physical facilities of the "drag-strip" by the Vargos. If the time and money they have put into the construction can be availed of only in a manner constituting a nuisance in fact, the accomplished nature of such investment would be no defense to the proper exercise of the police power. Rightly or wrongly, they are now committed, and their expenditures were provident or improvident as only future events may determine. On this feature of the case, they have advisedly gone ahead and taken their chances, and the failure to make any definitive ruling thereon in the present inconclusive proceedings can make no difference to their current situation which appears to be a fait accompli for all practical purposes. Insofar as the association and its members and participants are concerned, no such equities in their favor were demonstrated at any stage of the case, and no reason appears why they would need to make any materially important changes of position in order to test their rights if they really desire to do so and be sufficiently confident of their position that their activities will not result in nuisance conditions. Under the circumstances and in view of the township's declaration of policy as expressed by the ordinance, they are on notice, however, that they do so at their own peril. . . .

### Decree Nisi

And now, December 18, 1959, for the reasons stated in the foregoing adjudication, it is ordered and decreed that plaintiffs' complaint be dismissed and the respective prayers for relief therein denied and refused, plaintiffs to pay the costs.

This decree shall be entered as a decree nisi and shall become the final decree of the court unless exceptions be filed thereto within 20 days from this date. The prothonotary shall forthwith serve copies of this decree nisi and the foregoing adjudication upon counsel of record in person or by mail.