## Johnstown Poster Advertising Co. v. Borough of Portage

*Bennett, Jones & Stibich,* for plaintiff.

*Smorto & Creany* and *Joseph O'Kicki,* for defendant.

McDONALD, J., February 19, 1962.—On August 7, 1961, the Council of Portage Borough adopted ordinance 239, which, inter alia, provides:

"SECTION I: The word 'signs' as hereinafter used shall apply to and mean billboards, signs erected upon the ground, signs erected upon roofs of any and all structures, signs erected upon or attached to fences, signs painted upon or decorated upon or attached to walls of structures of any kind, and not including any sign placed upon the inside of the window of any structure.

"SECTION II: A sign varies in size, weight, structure, composition, color, appearance, and amount of maintenance expended thereon; after years of use becomes worn by the weather and natural elements, becomes a problem to maintain by the owners or succeeding owners of property, becomes a hazard or potential hazard to the residents and guests of the Borough of Portage, and, therefore, is deemed to be and is hereby declared to be a public nuisance.

"SECTION III: No erection and construction generally of signs shall be permitted."

It also provides for the issuance of permits for the repair of signs; registration of existing signs; notices to repair insecure signs; prohibition against enlarging, rebuilding or structurally altering existing signs and penalties for violation of the ordinance.

Plaintiff, a Pennsylvania corporation, engaged in the business of outdoor advertising, is the owner of property in Portage. It has made application and been denied a permit to erect a sign thereon.

This appeal is from the restraint of the ordinance and prays that it be declared void as beyond the powers of council to enact. Upon hearing, it was agreed the case should be submitted without testimony, it being stipulated that plaintiff was an aggrieved party.

Plaintiff contends the ordinance in effect has declared all signs to be "nuisances per se" and that such a declaration is beyond the powers of council. Defend-

ant contends the ordinance was adopted under provisions of the Act of May 4, 1927, P. L. 519, art. XII, sec. 1202, cl. IX, as amended, 53 PS §46209, which provides as follows:

"To prohibit and remove any nuisance or dangerous structure on public or private grounds, or to require the removal of the same by the owner or occupier of such grounds, in default of which the borough may cause the same to be done, and collect the cost thereof, together with a penalty of ten per centum of such cost, in the manner provided by law for the collection of municipal claims, or by action of assumpsit, or may seek relief by bill in equity."

It further contends council has authority to declare signs nuisances in fact where dangerous to the health, safety and welfare of the general public, and offensive to aethestic considerations. Defendant argues that signs are declared to be nuisances in fact rather than per se. We are satisfied neither the police power nor statute empower council to enforce the broad prohibition here attempted.

Plaintiff argues that section II, above quoted, is a broad generalization and not applicable to all signs. However, in its brief, defendant contends that section summarizes complaints of citizens that signs are a menace, especially to children, because of disrepair, and they pose a health problem when frequently used as lavatories.

To state that a sign ". . . after years of use . . . becomes a hazard or potential hazard to the residents and guests of the Borough of Portage, and, therefore, is deemed to be and is hereby declared to be a public nuisance" (ordinance, sec. II) is an unwarranted conclusion that, in effect, declares all signs to be nuisances per se because of their propensity to disrepair, etc. It seems to us whether a sign becomes a hazard depends upon its construction, maintenance, situs and

many other factors, not merely because it is a sign. Admittedly, it may, considering these factors, become a hazard or even invite trespasses such as those stated in defendant's brief. The same broad general description of a nuisance, as set forth in section II, may also be applied to buildings of a certain type construction, grandstands, bridges and many other structures which, like signs, have a utility and purpose in our modern day business and community life. To generally say that all signs are nuisances because some may be in fact, is analogous to saying that a dairy-diner, a pool room, a private park or other business, lawful in its nature, is unlawful because a particular like establishment is conducted so as to constitute a nuisance. To grant that a local governing body has the power to declare all structures of a particular type, or business, nuisances, not because they are nuisances in fact but because they have the propensity, without regard to the proof of such, would place in the hands of that body an awesome power.

There is no doubt under section 1202 above that council has the right to prohibit a nuisance in fact. However, it may not by legislative fiat declare and define all "signs" to be such. The section does not define "signs" as nuisances in fact or per se, nor does the legislature delegate such declarative authority to council.

We are satisfied that the statement in section II of the ordinance that "a sign . . . becomes a hazard . . ." and thereby all signs are nuisances, is too broad a conclusion upon which to deprive a property owner of the use of his property. As stated in Commonwealth v. Christopher, 184 Pa. Superior Ct. 205, 209, a case involving the power of township authorities to declare automobile junk yards as nuisances, the court stated:

". . . The fundamental right to earn a livelihood in pursuit of some lawful occupation is protected under

our respective constitutions and cannot be taken away by arbitratry or capricious legislation. . . ."

Defendant attempts to support its argument that the ordinance declares all signs to be nuisances in fact because of certain complaints by its citizens. However, here again the generalization is faulty, because there is no way of knowing whether the complaints are engendered by the condition of one or all signs. To follow it to an absurd conclusion, it could be said with the same premise, signs erected on buildings, which are also prohibited by the ordinance, or signs which have been erected in a structurally safe manner of durable materials and constantly maintained, are also the subject of similar complaints. In our opinion, to say that all signs are nuisances, without regard to the facts which may constitute any one or a class thereof as such, is a declaration that all signs are nuisances per se rather than nuisances in fact. There is no statutory authority to declare billboards and signs to be nuisances per se. Nor, can all signs, regardless of construction, situs and other factors be placed in this category.

In Commonwealth v. Hanzlik, 400 Pa. 134, the township authorities passed an ordinance declaring unlawful and a public nuisance, the storage of junked automobiles. Defendant was prosecuted for violation of the provisions of this ordinance. The lower court, affirmed by the Supreme Court, held the ordinance to be invalid as unreasonable, arbitrary and prohibitive, as an attempt to declare a business a nuisance per se when it was not a nuisance in fact. While this decision involves interpretation of section 702 of the Second Class Township Code of May 1, 1933, P. L. 103, 53 PS §65712, a parallel can be drawn to the case at bar in which defendant relies on the provisions of section 1202, supra, of the Borough Code which are similar, although not as specific, to the aforesaid section of the Township Code.

Our appellate courts have recently redefined the limits of the use of police power in Gambone v. Commonwealth, 375 Pa. 547, 550-51, as follows:

"Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property . . . its exercise, like that of all other governmental powers, is subject to constitutional limitations and judicial review . . . it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. . . ."

As stated in Bryan v. City of Chester, 212 Pa. 259 (262):

" '. . . It is doubtless within the power of the city to prohibit the erection of insecure billboards or other structures, require the owners to maintain them in a secure condition, and to provide for their removal at the expense of the owners in case they become dangerous. Perhaps regulations may be made with reference to the manner of construction so as to insure safety, but the prohibition of the erection of structures upon the lot line, however safe they may be, would be an unwarranted invasion of private right.' "

In our opinion, there is no authority under statute or the general police powers of the municipality to support the prohibition of all "signs" as here attempted. Although it is possible some may be nuisances in fact,

these may only be abated upon proper proof that they offend against the public welfare in some way.

We have found no decision in support of defendant's position. However, on the contrary, in Bryan, supra, an ordinance prohibiting the erection of billboards because ". . . in the sense of councils, showbills and advertising boards are unsightly, and very often are either a nuisance or create one . . ." was declared invalid as illegal, unreasonable and unjust. In doing so, the court stated (page 262):

". . . This is a gross attempt at interference with the lawful use of private property, and the learned judge below properly declared the ordinance void in concisely saying: 'I know of no principle upon which it can be sustained. It is not a police regulation, nor for the preservation of health or the abatement or prevention of a nuisance, nor is it a fence or fire regulation.' To this we do not feel called upon to add anything, contenting ourselves with quoting the following from Crawford v. City of Topeka, 51 Kansas, 756: 'All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public; but a limitation without reason or necessity cannot be enforced. In what way can the erection of a safe structure for advertising purposes, near the front of a lot, endanger public safety any more than a like structure for some other lawful purpose? . . . Although the police power is a broad one, it is not without limitation, and a secure structure which is not an infringement upon the public safety, and is not a nuisance, cannot be made one by legislative fiat, and then prohibited . . .' "

Incidentally, the general rule set forth in Crawford v. City of Topeka, and relied upon by the Supreme Court, is reaffirmed in Daugherty v. Messner, 404 Pa. 235, 238.

In Pittsburgh Poster Advertising Company v. Swissvale Borough, 70 Pa. Superior Ct. 224, defendant passed an ordinance regulating the erection, maintenance and use of billboards and other devices. It provided for a license for erection, payment of fees, submission of plans, and that applicants should sign an agreement to keep the property clear of rubbish, etc. It also prescribed the manner of construction, the materials which were to be used, and that a billboard not erected in accordance with the provisions of the ordinance was declared to be a common and public nuisance. The lower court declared the ordinance void, relying on Bryan, supra. This decision was affirmed on appeal. The Superior Court recognized (page 228) the right of municipalities to provide regulations for the construction of billboards in order to secure the safety and health of the people, but held that the regulations must be reasonable and, in this instance, that they were unreasonable and not within the powers of the borough authorities to enact.

It is significant that in each of these cases the court refused to hold that local governing bodies had the power to declare billboards as nuisances, either per se or by failure to follow certain regulations which were judicially held to be unreasonable. It follows, therefore, that if even some regulation of billboards may be held unreasonable, the prohibition of such is even more so.

In passing, we note the obvious irreconcilable inconsistency of the various provisions of the ordinance, which declare all signs public nuisances (section II) and then regulate the repair and maintenance of existing signs: sections IV, VII. As so often stated by our appellate courts, nuisances are not regulated but abated. It would seem, therefore, if all signs were of such a nature as to be injurious to health, safety, morals and the general welfare, which, in our opinion,

is an untenable conclusion, then even existing signs would have to be eliminated. To prohibit signs henceforth, and to tolerate those existing, is a paradox not sustainable on any reasonable basis.

We are firmly convinced that this prohibition on the erection of billboards and signs is an interference with the rights of a landowner and, in this case, the conduct of a business, bearing no substantial relation to the public health, safety, morals or general welfare of the Borough of Portage and its citizens. In our opinion, whether a billboard or sign is a nuisance must depend upon the facts and circumstances of each case and, where a proper ordinance has been enacted with reasonable regulatory provisions, by proof of violation of those provisions. Otherwise, the declaration that they are nuisances, whether per se, as we believe is the effect of this ordinance, or in fact, when based upon the complaints of citizens and the ex parte views of council translated into legislative fiat, is a deprivation of property which cannot be justified.

Defendant argues: "Where these signs are offensive to the aesthetic appearance of the community, they may be declared public nuisances. Should both of the above conditions exist (i.e., a danger to health, safety and welfare of the general public), there is an absolute manifesto, demanding their declaration as public nuisances." It points out a growing tendency of the courts to recognize aesthetic considerations in cases of this type. We are not convinced that such considerations alone are sufficient to permit a municipality to interfere with private property rights. However, the fact that they have entered into a decision of the municipal authorities in enacting reasonable regulations, such as zoning ordinances, will not invalidate the decisions: Liggett's Petition, 291 Pa. 109. The decision, however, must be supported by adequate legal reasons other than aesthetic considerations.

We agree with the holding in several cases cited by defendant that regulation, even prohibition of billboards and signs, may be justified for purely aesthetic considerations to protect general public property: Walnut and Quince Street Corp. v. Mills, 303 Pa. 25, involving the construction of a marquee over a city sidewalk in Philadelphia, which, incidentally, the courts found could have been held a nuisance as well as offensive to the standards of the Philadelphia Art Jury; Commonwealth v. Trimmer, 53 Dauph. 91, involving the erection of billboards along Front Street in Harrisburg, which is flanked by a public park and State buildings. There are many cases in which public authorities have stringently regulated and even prohibited advertising in public parks for purely aesthetic considerations.

The general application of the "aesthetic consideration" argument has been, with the above exception, rejected in Pennsylvania: Bryan v. City of Chester, supra; Pittsburgh Poster Advertising Co. v. Swissvale Borough, supra, page 227; Commonwealth v. Christopher, supra, page 221.

Other States have also rejected the argument. In Passaic v. Patterson Bill Posting A. & S. P. Co., 72 N. J. L. 285, 62 Atl. 267, an ordinance restricting the erection of billboards for aesthetic considerations was held invalid, the court stating:

"Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation."

See also Sunad, Inc., v. City of Sarasota (Fla.), 122 So. 2d 611, in which the same conclusion was reached.

While there no doubt is a modern tendency for community planning, having regard to both utilitarian and aesthetic considerations, it cannot however, be accomplished in one "fell swoop" of council's pen. The law

has wisely provided procedures for community planning which protect the rights and privileges of those who may, in the interests of the general welfare, be deprived of property and business. There must be, under the law, not only a sovereign decree, but just remuneration for the deprivation of one's property and its uses, unless, of course, the use of that property is offensive to public health, safety, morals and welfare.

That which is useful is not always beautiful, and the converse is also true. A community deprived of its useful buildings, structures and businesses because they offend aesthetic tastes would be beautiful, but, we fear, soon unpopulated. Not too many years ago the smoke stacks of the mighty steel mills in cities such as Johnstown and Pittsburgh belched forth foul smelling, acrid fumes and materials that deteriorated other property and were dangerous to health, the solution was not the elimination of these unsightly but necessary monsters of our modern industrial world, but regulation. While they still may detract from the beauty of the communities, none can deny their utility in our economic life. It was not many years ago that many of the communities of Cambria County, such as Portage, had unsightly coal operations, sometimes within the confines of the borough limits. Quite often it was these operations that spawned the communities. There is no doubt they offended against aesthetic tastes, but to have prohibited them would have been disastrous to the economic life of the community. With proper planning under constitutional safeguards, and with adequate and reasonable regulatory enactments, most of the unsightly and offensive but utilitarian businesses and structures can be controlled. It is doubtful, however, if the economic life of a community is to survive, that purely aesthetic considerations can prevail; in fact, to eliminate for this reason those structures and businesses from which citizens derive their livelihood would

no doubt bring down upon the local governing bodies the indignation of an irate and aroused citizenry.

Where then can we draw the line between utilitarian and aesthetic considerations? Are we to deprive businesses of the right to advertise their wares and at the same time permit a factory to operate in a grotesque building? Are we to prohibit a properly constructed billboard and at the same time permit a frame building, weather beaten and worn, to survive because it houses a business? To prohibit one and permit the other would be unjust, unreasonable and arbitrary. In our view, the answer to the dilemma faced by local governing bodies in compromising both the utilitarian and aesthetic is regulation by reasonable and adequate enactments, motivated by considerations of the public welfare, rather than an absolute prohibition of lawful structures and businesses.

In view of the foregoing discussion, we are satisfied sections II and III of ordinance 239 are invalid and beyond the powers of council to enact.

Section IV is unreasonable and, therefore, invalid, because it fails to distinguish between minor and major repairs. A minor repair, such as the securing of a frame, which might require the expenditure of but a few cents and be accomplished by a workman of plaintiff, or, if the sign of a local business, by the businessman himself, would, under this section, require detailed plans and specifications and the payment of a $2 permit, with no duty of inspection or other responsibility of the borough. We think this an unreasonable burden to impose.

While the requirement of registration set forth in section V is a reasonable one, the section itself is vague in that it does not set forth with particularity the "legal requirements in effect when they (the signs) were erected." If there are other ordinances providing such requirements, they should be referred to or in-

corporated in this ordinance. We, therefore, hold that, because of this vagueness, it also is invalid.

Since section VI refers to sections III, IV, and V, it is not operable in view of the invalidity of these sections.

Section VII would, in effect, control without specification of type, size, material, etc., the reconstruction and alteration of signs. It, therefore, is invalid as being too broad and vague.

Since the vital parts of ordinance 239 are excised, we, therefore, hold the entire ordinance invalid and make the following:

*Order*

Now, February 19, 1962, upon consideration of the pleadings, record and briefs, it is hereby ordered and decreed that ordinance 239, enacted August 7, 1961, by the Council of the Borough of Portage, is invalid, void and of no effect.

Costs to be paid by defendant.