## West Pottsgrove Township v. Rivlin Brothers

*Victor Roberts*, for plaintiff.

*S. Hunn*, for defendant.

GROSHENS, P. J., August 7, 1967.—This is an appeal from petitioners' conviction by a justice of the peace under a township ordinance requiring junk yards to be fenced.

## STATEMENT OF FACTS

Petitioners own a tract of land on Old Reading Pike in West Pottsgrove Township, Montgomery County, on which they operate a scrap processing and packaging business, and also a rigging, hauling and crane business. In the course of their scrap processing, petitioners bale and accumulate paper, rags and nonferrous materials in a warehouse for shipping, and of necessity must leave piles of scrap iron and steel lying about the premises while sorting and processing them for shipment.

On July 6, 1966, the West Pottsgrove Township Public Nuisance Ordinance was amended by the addition to section 4 thereof the following provision:

"The owner, lessee, occupant or proprietor of any junkyard now in existence upon any premises within the limits of the Township of West Pottsgrove, where any junk, refuse or scrap, including junked or scrapped automobiles and parts thereof, is collected, accumulated, stored, or kept, shall, within three months after the date of enactment of this amending ordinance, erect and maintain around the entire perimeter of such premise a chain link fence, at least 6 feet high

and having at least two strands of barbed wire suspended at an angle from the top of the fence".

Section 5 of the ordinance provides that each violation is a public nuisance punishable by fine or imprisonment.

On February 10, 1967, petitioners were arrested and charged with a violation of section 4. Thereafter, on February 16th, before a justice of the peace of West Pottsgrove Township, petitioners were tried and convicted of violating the said ordinance and were sentenced to a fine of $50 plus the costs of prosecution. Subsequently, petitioners petitioned this court for an allowance of appeal, and on March 17th, the appeal was allowed. A hearing de novo was held on June 22, 1967.

## ISSUES

There are three issues presented by this appeal:

1. Is the ordinance so arbitrary and unreasonable as to make it an invalid use of the police power?

2. Do petitioners, as the operators of a scrap processing business, come within the purview of the ordinance?

3. Is the ordinance so vague as to render it void for lack of specificity?

## DISCUSSION

1. The authority to license and regulate junk and salvage yards under the police power has long been recognized and upheld. This right has been expressly conferred by the First Class Township Code of June 24, 1931, P. L. 1206, sec. 1502, as amended by the Act of May 27, 1949, P. L. 1955, sec. 31, 53 PS §56543, as amended; Upper Dublin Township v. Suriano, 68 Montg. 326 (1952). However, such ordinances must not be unreasonable, arbitrary or capricious. In Commonwealth v. Christopher, 184 Pa. Superior Ct. 205

(1957), the court, in holding an ordinance regulating automobile graveyards invalid, declared, at pages 209-10:

"The business of operating a junk yard is a legitimate enterprise which, while offending the aesthetic taste, does not constitute a dangerous business or one known to be inherently injurious or harmful to the public. By itself, it does not adversely affect the public peace or safety, nor can it be designated as a fire or health hazard. While the regulation of such enterprises is legitimately within the scope of the police power, due regard must be had to the constitutional safeguards which demand that such regulations shall not be unreasonable, arbitrary or capricious and that the means adopted shall have real and substantial relation to the object to be attained".

Moreover, taking note of the fact that the Legislature, under The First Class Township Code, gave townships the right to regulate and license junk dealers and salvage yards, the court went on to say, at page 210:

"Had the legislature declared such activity as a nuisance, it would not have granted authority to first class townships, for example, to regulate such activity. Nuisances are not regulated but abated. What is not an infringement upon public safety and is not a nuisance, cannot be made one by legislative fiat and then prohibited".

In the instant case, the township has arbitrarily declared unfenced junkyard premises public nuisances. There has been no showing how a chain fence around a junkyard relates to the public health, welfare, morals or safety.

"By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable,

unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts": Gambone v. Commonwealth, 375 Pa. 547, 552 (1954), and cases cited therein.

It is doubtful whether an ordinance making a blanket requirement for the fencing of junkyard premises at a substantial cost to the owner (estimated at anywhere from $6,354.93 to $25,884), is a valid use of the police power without some showing of benefit to the public health, safety, morals or welfare. We recognize that there is a presumption of constitutionality and a presumption that the township legislative body acted to serve the public welfare. However, this court may inquire as to whether a particular regulation is a valid use of the police power: Anstine v. Zoning Board of Adjustment, 411 Pa. 33, 37, 42 (1963). See, for example, Commonwealth v. Crash, 55 Mun. L. R. 310 (1964) and Township of West Mead v. Terregino, 57 Mun. L. R. 16 (1965), where ordinances similar to that involved here were held invalid in the absence of any evidence of their relation to the public health, welfare or safety. In the instant case, while there is conflicting testimony as to the danger to children presented by the piles of sheared metal, we do not feel that a sufficiently substantial relation to the

public safety was proved. We need not base our decision on this basis alone, however, as the ordinance falls of its own weight, in its manifest lack of specificity.

II. The ordinance involved here applies to the "owner, lessee, occupant or proprietor of any junkyard now in existence". The ordinance does not define what it means by "junkyard". Under the Statutory Construction Act, words in statutes must be construed under their common and approved everyday usage: Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533; Coverdale Appeal, 188 Pa. Superior Ct. 587 (1959). Junk is defined by Webster's New International Dictionary as "old iron, glass, paper, cordage or other waste which may be treated to be used again in some form". A junkyard, then, would be a place where such materials are accumulated. Petitioners do accumulate some of the substances included in this definition. However, this accumulation is only one step of a larger operation, i.e., processing and packaging these materials. If petitioners are included in this definition, then so are such companies as United States Steel and Bethlehem Steel, which buy and accumulate scrap metal for use in their blast furnaces. Similarly, a large textile manufacturer which buys discarded wool products for use in the weaving of new cloth would be a junk dealer. Obviously, this is not within the scope of the enabling statute, which clearly was designed to cover ". . . places used and maintained for the collection, storage and disposal of used and second-hand goods and materials". Therefore, even if the ordinance is a valid exercise of the police power, it is void in its application to the operations of petitioner. On the other hand, if the ordinance does not apply to petitioners, then it is vague and uncertain for on its face it purports to do so.

III. The terms of the ordinance require the erection ". . . around the entire perimeter of such premises (where junk, refuse or scrap is accumulated) a chain link fence at least six feet high . . ." What does the ordinance mean by entire perimeter? Is the fence to extend to the deed line or the street line? If the ordinance means the deed line, the fence might run through the midle of public streets.

Petitioners have a street running through their property (Grossman Street). Are they to fence this street off also? Petitioners, moreover, use these same premises for other businesses: a rigging business, a crane business and a heavy hauling business. If they are required to fence their entire premises, they would be denied equal protection, since other rigging, hauling and crane businesses in the township are not required to be fenced. Further, the fencing of the *entire* premises would be ". . . beyond the necessity for the case . . .", and therefore unconstitutional: Commonwealth ex rel. Woodside v. Sun Ray Drug Company, 383 Pa. 1 (1955). Did the commissioners mean, rather, the entire premises *used for* the accumulation of *junk*? If so, why did they not express this intent? Obviously, the provisions are vague as to their intent.

Finally, there are no provisions or specifications as to what type of fence, nine gauge or 11 gauge steel, or aluminum. What size mesh is to be used? How many gates should be provided for? Despite the presumption in favor of the validity of a statute, "Where a statute is 'so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative' ": Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 595 (1947). We feel and do hereby find that the ordinance in the instant case

fits this definition and is, therefore, null and void as to petitioners.

ORDER

And now, August 7, 1967, the judgment of conviction is reversed. Costs are to be paid by West Pottsgrove Township.